EDWIN F. JAKUBOWSKI, PLAINTIFF-RESPONDENT, v. MINNESOTA MINING AND MANUFACTURING, A COR-PORATION OF DELAWARE, DEFENDANT-APPELLANT.

Argued February 18, 1964—Decided April 20, 1964.

178

Mr. *William R. Morrison* argued the cause for defendant-appellant (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

Mr. *Joseph Coult* argued the cause for plaintiff-respondent (*Mr. Peter Cammelieri,* attorney).

The opinion of the court was delivered by

PROCTOR, J. This is a products liability case. The plaintiff, an employee of Ford Motor Company at its plant in Mahwah, New Jersey, brought this action in negligence and breach of warranty against the defendant manufacturer of an allegedly defective abrasive disc which broke and struck the

plaintiff while he was using it in the course of his employment. At the close of the plaintiff's proofs the trial court granted defendant's motion for involuntary dismissal on both counts. The Appellate Division unanimously held that plaintiff had failed to establish a *prima facie* case of negligence or of express warranty. However, the majority held that plaintiff was entitled to go to the jury on his claim for breach of implied warranties of merchantability and fitness for a particular purpose. The dissent agreed that such warranties extended to the plaintiff but found that he had failed, either directly or circumstantially, to prove a breach thereof. *Jakubowski v. Minnesota Mining and Manufacturing*, 80 *N. J. Super.* 184 (1963). Defendant appeals as of right. *R. R.* 1:2–1(b).

Defendant is a manufacturer of abrasive discs and prior to the accident here involved had sold to Ford Motor Company 200,000 to 300,000 Type C, 24-grit, 9-inch, fibre-backed, flexible sanding discs of the type plaintiff was using when he was injured. An additional 50,000 to 100,000 were purchased and used by Ford during the three years following plaintiff's accident. The discs were described in defendant's catalog as follows:

"3M DISCS TYPE 'C'—GREEN BACK. Are stronger, sharper, and longer-lived than ever before available—anywhere. This construction is the best all-purpose disc—for edge sanding, flat sanding, and solder sanding or oil filling operations. It's 'shape controlled' to resist effects of humidity and temperature.
Aluminum Oxide Mineral, Heavy All-Fibre Backing, Closed Coat, Resinbonded, 150–50, 36, 24, 16."

Plaintiff had worked for 17 years as a mechanic and body finisher on the production line at Ford and was experienced in the use of abrasive discs. On the day of the accident he was a relief operator for a crew of 15 grinders and solderers and had that morning as part of his duties brought from the stockroom a supply of 3M discs for the use of the grinders on the line. One of the grinders asked to be relieved and handed the plaintiff his pneumatic rotary-type grinding machine with

a flexible sanding disc attached to its shaft. The grinder whom plaintiff relieved had been using the machine with the same disc attached, and plaintiff did not replace the disc before commencing his operation. The extent of the prior use of the disc does not appear. The grinding machine weighs about 7 pounds and is operated by air pressure which propels the disc on the shaft over a rubber or fiber backing plate with a diameter a few inches less than that of the disc. The machine is preset to rotate at 3,600 revolutions per minute and with the 24-grit Type C disc attached is intended for rough sanding or snagging operations in which a braze, a "big gob" of brass, which may have sharp edges and abrupt corners, is cut down to a smooth surface by the action of the spinning disc applied under pressure by the operator. This type of snagging operation exposes the abrasive disc to a very punishing type of treatment. Plaintiff set the machine in operation at full speed by grasping its two handles and closing the valve in one of them to start the motor. He applied the spinning disc under pressure to a braze on an automobile body at the point where the windshield and door post are joined when the disc snapped in half and struck him in the abdomen. A Ford nurse applied mercurochrome and a bandage to cover the bruise, which was about 3 inches long, and sent him back to the production line. Plaintiff claims that the injury aggravated a previous duodenal ulcer condition or alternatively that it caused the condition. The broken disc was not produced at the trial, nor had anyone examined it or checked to see what had caused it to break. Ford safety engineers, whose responsibility it was to see that the various operations and machinery used in the plant were reasonably safe, had approved the purchase of these discs. Further, competitive tests of these and other manufacturers' discs had been conducted on the Ford production line by its engineers to determine durability and effectiveness, and for cost comparison. Ford determined that this type of disc could be used for five operations before a fresh one was required.

The plaintiff testified that the discs "break often, and we change them as they break." Further, in response to the court's inquiry as to whether these discs had broken before, the plaintiff responded, "Yes; they break. We got hit many a time, but never thought nothing of it. A lot of fellows get hurt."

 The Appellate Division, while it found no proof of negligence, nevertheless held that plaintiff's proofs entitled him to go to the jury on the implied warranty issue. Since we view the evidence as insufficient to establish an unreasonably dangerous condition of the product attributable to the defendant, it is immaterial whether plaintiff's action be for negligence or breach of sales warranty. Plaintiff must establish by some proof that weighs heavier than mere surmise or conjecture that his injury resulted from an unreasonably dangerous condition of the disc for which defendant is responsible. See *Long v. Landy*, 35 *N. J.* 44, 54 (1961); *Heath v. Channel Lumber Co.*, 25 *N. J. Super.* 6, 13 (*App. Div.* 1953); *cf. Miller v. Davis and Averill, Inc.*, 137 *N. J. L.* 671, 675 (*E. & A.* 1948). According to Harper & James, whether the products liability action be in tort for negligence, or in warranty, the plaintiff must show that the goods of which he complains were unreasonably dangerous for their intended use and that the unreasonably dangerous condition existed when the goods left the defendant's hands. 2 *Torts*, § 28.22, at *p.* 1584 (1956); see also *Simon v. Graham Bakery*, 17 *N. J.* 525, 531 (1955); *Prosser, Torts*, § 84, *p.* 509 (1955) (plaintiff must prove the product was defective when it left the defendant's control); Prosser, "The Assault upon the Citadel (Strict Liability to the Consumer)," 69 *Yale L. J.* 1099, 1114 (1960); 1 *Frumer and Friedman, Products Liability*, § 16.01[1], *p.* 359 (1963). The necessity for such proof is implicit in the opinion of this court in *Henningsen v. Bloomfield Motors, Inc.*, 32 *N. J.* 358, 410–411 (1960).

██ The Appellate Division, as noted above, unanimously agreed with the trial court that plaintiff had failed to prove a cause of action in negligence. Plaintiff's claim that the

defendant was negligent in failing to designate on the face of the disc the maximum speed of operation was rejected since there was no proof suggesting that the breaking of the disc was related thereto. Moreover, it held that the doctrine of *res ipsa loquitur* did not apply since the plaintiff failed to show that his injury was caused by something which lay within the defendant's responsibility. Since he failed to exclude other possible causes for his injury, *e. g.*, the conduct of the grinder whom he relieved, he had not produced sufficient evidence from which a jury could reasonably infer that his injury was caused by a condition of the product arising from the negligence of the defendant manufacturer. 80 *N. J. Super.*, at *p.* 193. We agree with this view of the evidence, but in our opinion it is for precisely this reason, *i. e.*, that the breaking of the disc was not shown to be attributable to the manufacturer, that we find the plaintiff has failed to prove a breach of warranty.

The doctrine of *res ipsa loquitur*, where applicable, permits an inference that the plaintiff's injury was caused by the defendant's negligence. Generally, it cannot be invoked until it is shown that the instrumentality causing the injury was within the control of the defendant at the time of the mishap. However, if the instrumentality has left the control of the defendant prior thereto, the plaintiff may be permitted to invoke the doctrine if he introduces evidence that it was not improperly handled by himself or others, or its condition otherwise changed, after control was relinquished by the defendant. *Bornstein v. Metropolitan Bottling Co.*, 26 *N. J.* 263, 273 (1958). When the doctrine of *res ipsa* is invoked the theory is that the type of accident which occurred does not happen in the absence of negligence, and where the defendant is in control of the instrumentality it is reasonable to infer that he was negligent. While a manufacturer is liable on its warranty irrespective of negligence, nevertheless it is necessary for the plaintiff to show that the dangerous condition which he contends constitutes a breach of warranty had its genesis when the instrumentality was within the

control of the manufacturer. Accordingly, in the absence of direct evidence that the product is defective because of a manufacturing flaw or inadequate design, or other evidence which would permit an inference that a dangerous condition existed prior to sale, it is necessary to negate other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable to infer that a dangerous condition existed at the time the defendant had control.

Plaintiff has shown that he used the disc in a proper manner and that it broke in use, and he contends that this evidence is sufficient to show a breach of warranty. The burden of proof was upon the plaintiff to show that the disc was unfit for its intended purpose when purchased from the manufacturer. "The test to be applied was whether the circumstances shown were such as to justify an inference of probability as distinguished from mere possibility." *Simon v. Graham Bakery, supra,* 17 *N. J.,* at *p.* 531. While it is possible that the disc broke because of a manufacturing flaw or because the design was inherently inadequate for rough snagging operations, it is just as possible that mishandling by the prior user or users or use beyond the expected life span of the disc was responsible.

It is common knowledge that materials subject to friction will eventually wear out. *Courtois v. General Motors Corp.,* 37 *N. J.* 525, 543 (1962). While under normal conditions it can perhaps be expected that the backing of the disc will remain intact so long as useful abrasive remains on it, the plaintiff has introduced no evidence tending to show that any abrasive remained on this disc at the time he used it. The Ford process engineering manager testified that an investigation made under his direction indicated that five operations could be performed by a disc before replacement. He also testified that cost factors were considered in the selection of the disc. If Ford for reasons of production economy was attempting to use these discs beyond their safe useful life, the manufacturer cannot be held responsible on the ground

that the disc was not reasonably fit for its intended purpose, in the absence of evidence that the manufacturer concurred in Ford's decision regarding the extent of the use of each disc. There is no such evidence here nor is there any evidence that plaintiff or his co-workers at any time complained to Ford that the discs were inadequate for the job although they often broke in use. Further, there is no evidence that Ford ever complained to the defendant of the inadequacy of the discs. Indeed, Ford continued to use thousands of these discs on the same operation after plaintiff's mishap. There are industrial operations which involve a certain degree of hazard no matter how carefully the operation is engineered and even though the most adequate tools available are used. And it cannot be said that responsibility for industrial accidents should fall on the manufacturer of the tool, rather than the employer who has selected the tool and engineered the operation, merely because the tool breaks.

The operation on which these discs were used is known as "snagging." The abrasive is exposed to a very punishing treatment; it must cut down excessive metal having sharp edges and abrupt corners. The skill of the operator using the disc no doubt plays a role in the service life which can be expected. It is common knowledge that tools can be damaged in the hands of a novice. Even an expert carpenter will occasionally bend a nail while driving it in and thus destroy its usefulness though it was fit for the purpose intended when the carpenter picked it up. And it is common knowledge that sandpaper intended for rough sanding of wood will tear or break if applied ineptly to a rough surface or if it is overused. The implied warranty of merchantability means that the product is reasonably fit for the purpose intended; it does not imply absolute perfection; and there is no duty on the part of a manufacturer to furnish tools which will not wear out. *Courtois v. General Motors Corp., supra,* 37 *N. J.,* at *p.* 543.

Plaintiff has failed to introduce any evidence from which it is reasonable to infer that the expected useful life of

the disc had not been exhausted at the time it broke. There is no hint in the record as to the manner and extent of use of the disc prior to plaintiff's use of it. Plaintiff failed to produce as a witness the workman he succeeded or to introduce other evidence which would exclude prior mishandling or overuse of the disc as a cause of the break. It is quite possible that a weakness in the backing was created by inexpert or careless use during the preceding operation, causing the disc to break when plaintiff subsequently used it. See *Kramer v. R. M. Hollingshead Corp.*, 5 *N. J.* 386, 392 (1950).

Thus, we have here four possible causes of the break, *viz.:* manufacturing flaw, inadequate design, misuse, or overuse. The plaintiff has introduced no evidence which indicates that one of these causes is more probable than the others. In order to recover, he must present evidence from which it is reasonable to infer that more probably than not the cause of the break was one for which the defendant is responsible. *Dunn v. Hoffman Beverage Co.*, 126 *N. J. L.* 556, 559 (*E. & A.* 1941); *Stumpf v. D. L. & W. R. R. Co.*, 76 *N. J. L.* 153, 158 (*Sup. Ct.* 1908). We think the plaintiff has failed to show that it is more probable than not that the disc broke as a result of an unreasonably dangerous condition which existed at the time it was delivered by the defendant manufacturer to the plaintiff's employer. When a product can be damaged in the course of use and thereby become unreasonably dangerous, we cannot hold its manufacturer liable in warranty for the mere failure of the product in the absence of evidence tending to show that the product was not mishandled or used beyond its reasonably expected life span after it left the manufacturer's hands.

 The only evidence of the existence of a defect in the disc was given by Paul Gearhart, manager of Ford's Engineering Process Department. In answering a hypothetical question which assumed that plaintiff was using the disc in the manner intended, and that the disc had previously been used, Gearhart expressed the opinion that the disc "is independent of everything else, and that [it] must have had a

defect * * * The basis for my opinion is the experience I've had with this type of equipment, and that it is not related to the tool that is driving the wheel [disc]. Any relationship is with the disc itself, rather than the machine. Within my experience, there has been nothing that could contribute to a wheel breakdown or failure that could be attributed to an outside source of the driven type machine like this." The trial court attempted to elicit some additional basis for this opinion but none was forthcoming except the comment that Gearhart had read the specifications and therefore knew the disc was intended to be used on the type of operation plaintiff was engaged in at the time of the accident. The trial court determined that Gearhart's testimony was not worthy of consideration. The plaintiff in his briefs here and in the Appellate Division does not question this ruling, and we find no error in it.

The best that can be said of Gearhart's testimony is that the grinding machine was not responsible for the accident and therefore the disc must have been the cause of the accident, and that in his opinion the fact that the disc broke indicated that it was defective. He stated that he had never seen or heard of these discs breaking while in use. Neither he nor anyone else testified that these discs should not break if misused or overused. Gearhart frankly admitted that he had no knowledge of the composition of the discs; he did not know whether the backing was cloth or paper fibre; and he was unaware of the manufacturing processes involved in making the discs. But even assuming that Gearhart's opinion may be admissible, it establishes only the fact that the disc was defective when it broke, the source of the defect was not adverted to by him. Since he did not consider the manner and extent of the handling of the disc subsequent to delivery of it to Ford, it would amount to mere guesswork to conclude from this opinion that the defect or dangerous condition of the disc was attributable to the period of manufacture or delivery rather than to possible subsequent misuse

or overuse. See *Rempfer v. Deerfield Packing Corp.*, 4 *N. J.* 135, 145 (1950).

For the above reasons we conclude that the trial court properly granted defendant's motion for dismissal. The judgment of the Appellate Division is reversed and the judgment of the trial court is affirmed.

WEINTRAUB, C. J. (dissenting). It is not for us to decide the ultimate factual issues. The question is only whether there was evidence in plaintiff's case from which those ultimate issues could fairly be decided his way. I believe there was. And in this connection, I see no difference between an action for negligence and one for breach of implied warranty, for upon either approach, the pivotal question on the motion for judgment was whether the abrasive disc was defective when it left defendant's plant. See Prosser, "The Assault upon the Citadel (Strict Liability to the Consumer)," 69 *Yale L. J.* 1099, 1114 (1960).

We are not dealing with a rubber band that broke and stung a finger. We are dealing with an abrasive disc intended to be spun on a wheel at some 3,600 revolutions per minute, and the jury could believe plaintiff's description of the force with which the errant disc hit him:

"Q. All right. Will you tell us what it felt like? A. Well, it was a terrific blow, like I got hit with a bat or something, and made me bend over, knocked the breath right out of me. I held onto the hose a while, a few seconds or minutes, I guess, and the fellow I was relieving came up and took my place, and I went over in a crouched position to my foreman and told him my disc just snapped in half and I would like to go to medics, and I showed him where it was bleeding from my belly button to here, it was all bruised up, so he gave me a pass and I went to the medics immediately, and when I got to the medics, the fellow there put some mercurochrome on and a bandage from my belly button to my side.

Q. Will you describe what this injury looked like? A. It was black and blue and bruised and bleeding in the center here."

A jury could find the risk of such harm was unreasonable and not to be expected from a disc when put to its intended use,

and hence that if the disc was here so used, it must have been defective.[1]

My difficulty with the majority opinion is that it assumes that other possible causes for the disintegration of the disc are reasonably involved and hence that plaintiff to prevail was required to exclude them. So far as I know, those possibilities may be wholly imaginary. Indeed, none of them was suggested in the pretrial order, which, I must regretfully add, was poor notwithstanding the case was ideal for a revealing and productive pretrial conference.

One such possibility discussed by the majority is whether the defect, if there were one, originated after the disc left defendant's plant. If we were dealing with delicate china, I would recognize that intermediate handling could be a factor, but we here have a tough, flexible, abrasive disc designed to take punishing use. I find it incomprehensible that it could have been injured in shipment or handling. More importantly, I just do not know, and that being so, I ought not to burden plaintiff with excluding that possibility until something in the evidence indicates it is more than a phantom.

Next, the majority opinion says that plaintiff should have proved (1) that the man he replaced at the wheel used the disc properly and (2) that the disc was not used beyond its expected life. I see no basis for requiring that proof. In the first place, I find nothing but the argument of counsel to suggest that improper or excessive use was realistically involved. My guess would be the other way. I would expect an abrasive disc to survive a mere lack of skill in handling the wheel; and as to excessive use, I read the record to say that a disc was expected to do the necessary job on five automobile bodies in the sense that the abrasive surface would be effective for that

---

[1] An alternative would be that the manufacturer expected these discs to break during their intended use, in which event there would be the different question whether defendant culpably failed to warn against this risk of injury. We need not pursue this alternative thesis since the record does not suggest the defendant expected the discs to behave in that way.

quantity. I do not read it to mean that a disc would explode or disintegrate the instant its abrasive surface became inadequate for the task at hand. But, if we ought seriously to entertain those possibilities at this juncture of the case, still a jury could readily infer there was no mishandling. Plaintiff was skilled and experienced, and I would infer that the regular operator whom plaintiff had relieved was trained for that work. Since both knew how to handle the wheel, why should we speculate that they departed from their regular practice and habit, and why should we assume that plaintiff did so idle a thing as to use the disc after it ceased to abrade? I believe a jury could infer, on the record as it stands, that the disc was used as it was intended to be used when the accident occurred.

In this connection, I refer to the testimony of the engineer Gearhart that the disc must have been defective. His testimony was not struck, and it should not be discarded on a motion for judgment merely because the foundation might have been more explicitly drawn out. He was thoroughly familiar with these discs and with the grinding operation. His testimony could fairly be understood to mean that there is nothing the grinders could have done to account for the disintegration of an adequate disc and hence there must have been a defect. This testimony gives additional strength to proof which I would find to be independently sufficient to withstand·a motion at the close of plaintiff's case.

Accordingly, I believe a jury could rationally infer from the evidence that the disc was defective when it left defendant's plant and involved an unreasonable risk of harm. The evidence thus sufficed for the warranty theory. I think it was equally sufficient on the negligence thesis since, in the absence of some explanation by defendant, a jury could infer the defect was the product of its negligence. See Prosser, *supra,* 69 *Yale L. J.,* at *p.* 1114. In that respect I disagree with the majority of the Appellate Division. I would modify their judgment accordingly and affirm it as thus modified.

JACOBS and FRANCIS, JJ., join in this dissent.

*For reversal* — Justices PROCTOR, HALL, SCHETTINO and HANEMAN—4.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS and FRANCIS—3.