## THE SOUTHERN COMPANY, INC.
### v. James GRAHAM and Verdie Mae GRAHAM, d/b/a GRAHAM DRIVE-IN

80-237                                   607 S.W. 2d 677

Supreme Court of Arkansas
Opinion delivered November 24, 1980

*Brown. Compton & Prewett. P.A.*, by: *Eugene D. Bramblett*, for appellant.

*Faulkner. Goza & Rollins*, by: *V. Benton Rollins*, for appellees.

FRANK HOLT, Justice. This is a products liability case. The appellees purchased two gasoline underground storage

tanks, gasoline pumps, lines, and other accessory equipment from appellant. These items were installed by the appellant in October of 1975 on appellees' premises, a drive-in business, which included a laundromat, restaurant, motel, and a house trailer. In July, 1976, the appellees and their customers began to notice the odor of gasoline in the water system. Appellees' water supply consisted of a 30' deep well located 40' or 50' from the underground storage tanks. This well supplied water for the trailer, restaurant and motel. Another well, 94' in depth and located uphill approximately 25' from the first well, supplied water to the laundromat. Gradually, the odor became worse and the tap water began to show a substantial amount of gasoline in it. Eventually, appellees had to stop using the water supply and began hauling water in by truck. In June and July, 1977, at appellees' request, appellant tested the equipment for leaks and found none. The contamination continued to worsen. In August, 1977, or a month later, the appellant removed the tanks, lines and other equipment, and again the test revealed no leaks; however, parts of a protective coating on the tanks were corroded by gasoline. The tanks were recoated and reinstalled. Appellant does not question the contamination of the well closest to the pumps. Appellant acknowledges that when making the last test for leaks. it found this well contained 6 and 1/2" of gasoline on the surface of the water. Appellees testified that after the removal and reinstallation of the tanks, lines and other equipment, the contamination began to gradually lessen, and it was almost nonexistent at the time of trial in April, 1979.

Appellant filed this action in chancery court to enforce its liens on the premises because of appellee's refusal to pay appellant $3,719.92 for testing and reinstalling the equipment. The appellees filed a cross-complaint seeking to recover from appellant the damages caused by the gasoline contaminated water. The chancellor found appellant was liable, under Ark. Stat. Ann. § 85-2-318.2 (Supp. 1979), and allowed a setoff against appellant's claim. Appellant asserts that the trial court erred in finding for the appellees on strict liability since the appellees failed to establish by a preponderance of the evidence that the product was supplied to them in a defective condition and the defective condition

was the proximate cause of the harm to the property. Appellant argues there was no evidence that the tanks, lines and pumps were supplied in a defective condition; rather, the evidence as to the tests shows they were not defective. Therefore, it was speculation to say these products caused the damage when other causes were possible and not ruled out.

We have adopted the doctrine of strict liability in torts in products liability cases. Section 85-2-318-2, *supra*, provides:

> A supplier of a product is subject to liability in damages for harm to a person or to property if:
> (a) the supplier is engaged in the business of manufacturing, assembling, selling, leasing or otherwise distributing such product;
> (b) the product was supplied by him in a defective condition which rendered it unreasonably dangerous; and
> (3) the defective condition was a proximate cause of the harm to person or property.

The doctrine of strict liability does not change the burden of proof as to the exitence of a flaw or defect in a product. However, it does away with the necessity of proving negligence in order to recover for injuries resulting from a defective product. *Higgins* v. *General Motor Corp.*, 250 Ark. 551, 465 S.W. 2d 898 (1975); and *Cockman* v. *Welder's Supply Co.*, 265 Ark. 612, 580 S.W. 2d 455 (1979). Prosser, The Fall of the Citadel, 32 ATL L.J., p. 21 (1968), has discussed the elements of proof:

> Strict liability eliminates both privity and negligence; but it still does not prove the plaintiff's case. He still has the burden of establishing that the particular defendant has sold a product which he should not have sold, and that it caused his injury. This means that he must prove, first of all, not only that he has been injured, but that he has been injured by the product. The mere possibility that this may have occurred is not enough, and there must be evidence from which the jury may reasonably conclude that it is more probable than not . . . . The plaintiff must prove also that he was injured because the product was defective,

or otherwise unsafe for his use . . . .

Further is Prosser Torts, § 102, p. 672 (4th Ed. 1971), it is stated that such proof may be by circumstantial evidence:

> The difficult problems are those of proof by circumstantial evidence. Strictly speaking, since proof of negligence is not in issue, res ipsa loquitur has no application to strict liability; but the inferences which are the core of the doctrine remain, and are not less applicable. The plaintiff is not required to eliminate all other possibilities, and so prove his case beyond a reasonable doubt. As on other issues in civil actions, it is enough that he makes out a preponderance of probability. It is enough that the court cannot say that reasonable men on the jury could not find it more likely than not that the fact is true.

See also, Woods, Comparative Fault, §§ 14:18 and 14:19 (1978); and Restatement, Torts 2d § 402A (1965).

It is true, as appellant argues, that liability cannot be based on mere conjecture and guess. *Delta Oxygen Co.* v. *Scott*, 238 Ark. 534, 383 S.W. 2d 885 (1964). However, in the absence of direct proof of a specific defect, it is sufficient if a plaintiff negates other possible causes of failure of the product, not attributable to the defendant, and thus raises a reasonable inference that the defendant as argued here, is responsible for the defect. *Higgins* v. *General Motors Corp.*, *supra*, and *Cockman* v. *Welder's Supply Co, supra*. See also *Jakubowski* v. *Minnesota Mining and Manufacturing*, 42 N.J. 177, 199 A. 2d 826 (1964); *Greco* v. *Bucciconi Engineering Co.*, 407 F. 2d 87 (3rd Cir. 1969); *Corbin* v. *Camden Coca-Cola Bottling Co.*, 290 A. 2d 441, 60 N.J. 425 (1972); *Lindsay* v. *McDonnell Douglas Aircraft Corp.*, 460 F. 2d 631 (8th Cir. 1972).

The burden of proof was upon appellees to show that the circumstances surrounding the transaction were such as to justify a reasonable inference of probability rather than a mere possibility that appellant is responsible. Appellant argues it could have been caused by car owners overflowing their tanks, the surplus running down through some broken

concrete into the sand below and into the ground. However, appellees testifed they broke the concrete over the tanks after the problem arose so appellant could dig up the tanks to test them. Appellees replaced the concrete afterwards. The contention that the supplier could have spilled gasoline when filling the storage tanks was also rebutted by appellees. Although appellant argues there may have been gasoline stored at a lumber mill in the vicinity which could be causing the contamination, the mill was separated from appellees' business by a valley, and there was no evidence that gasoline was stored there. It is also asserted there is no evidence negating the possibility that the contamination resulted from some source of gasoline, such as the gasoline station 3 miles distant, which might be transmitted by the underground water table. The evidence, however, is uncontroverted that no contamination of appellees' water system existed during the 30 years appellees were in business preceding appellant's installation of its product. Further, since appellant's removal, testing, recoating, and reinstalling their product, the presence of gasoline in their water system has gradually diminished and has become practically eliminated.

In our view, the chancellor correctly found by a preponderance of the evidence that appellees' evidence sufficiently negated the other possible causes argued by appellant, and, therefore, appellant is responsible for appellees' damages.

Affirmed.

FOGLEMAN, C.J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I dissent because I do not think that other potential causes of gasoline appearing in appellees' water well were sufficiently negated.