

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-15-445

| | |
|---|---|
| LAKESIA CHANDLER and JASMINE DAVIS | Opinion Delivered August 31, 2016 |
| APPELLANTS | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. CV-2011-209] |
| V. | |
| WAL-MART STORES INC., L'OREAL USA, INC., AND L'OREAL USA PRODUCTS, INC. | HONORABLE RICHARD L. PROCTOR, JUDGE |
| APPELLEES | |
| | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellants Lakesia Chandler and Jasmine Davis appeal from the circuit court's order granting summary judgment in favor of appellees, Wal-Mart Stores, Inc. ("Wal-Mart"); L'Oreal USA; and L'Oreal USA Products, Inc. (collectively, "L'Oreal"). On appeal, appellants argue that the circuit court erred by (1) ignoring evidence that was favorable to them; (2) granting summary judgment where questions of material fact remain as to the product's defects and as to appellees' liability, whether in strict liability or negligence; (3) granting summary judgment where questions of material fact remain as to their claims of deficient labeling; (4) granting summary judgment on their claims for intentional infliction of emotional distress ("IIED") and punitive damages; and (5) granting summary judgment on their remaining claims. We affirm.

On June 15, 2011, Chandler, individually and as next friend to minor, Jasmine Davis, filed suit against Wal-Mart in connection with injuries that her thirteen-year-old daughter,

Davis, received after using Garnier Fructis Sleek and Shine Anti–Frizz Serum ("serum"), a product that was purchased at a Wal-Mart store in West Helena, Arkansas.[1] A first amended complaint was filed on December 20, 2011, adding the manufacturer, L'Oreal, as a defendant. The complaint alleged that Davis suffered third-degree burns and became permanently disfigured after using the serum on September 21, 2010. According to the facts alleged in the complaint, Davis applied the serum to her hair and then began to comb her hair with a metal straightening comb, which she had heated on a gas stove. The complaint stated that, immediately after she began combing her hair, Davis's head, arms, and upper body became engulfed in flames. Davis underwent six surgeries for tissue removal, skin replacement, and facial and ear reconstruction. The complaint claimed that the serum contains two primary ingredients, cyclopentasiloxane and dimethiconol, which are known to be flammable. It was further alleged that testing had shown that when a hot comb was used on hair treated with the serum, the hair began to smoke. Based on the results of the tests, appellants claimed that the product was defective and that appellees had failed to adequately warn consumers about the danger. Specifically, appellants alleged claims of strict products liability, breach of warranty, strict products liability–failure to warn, negligent failure to warn, and IIED. In addition to general damages, the complaint also sought punitive damages against appellees.

Appellees separately answered the amended complaint and denied the allegations.

---

[1] Davis has now reached eighteen years of age, and appellants have requested that the style of the case be revised to reflect their individual claims.

On December 9, 2014, appellees filed a joint motion for summary judgment. They claimed that the serum did not contribute to the incident wherein Davis's hair caught on fire and that appellants could not demonstrate a genuine issue of material fact to the contrary. In support of their motion, appellees attached excerpts from Davis's deposition stating that her hair had caught on fire after approximately one hour of straightening her hair with the hot comb, which she had done while standing next to a gas stove that she had used to periodically reheat the comb. Appellees also attached a picture of the comb, which had a wooden handle that was charred.

In addition, appellees attached deposition excerpts from appellants' expert, Dr. Harold Zeliger, stating that he had not seen or inspected the charred comb or the gas stove used by Davis prior to pictures being shown to him during the deposition. He indicated that he was not even aware that the comb had a wooden handle. Dr. Zeliger further stated that he had not performed any independent investigation or tests to support his conclusion that Davis's hair caught on fire due to the auto-ignition of chemicals in the serum when the metallic portion of the hot comb was applied. Instead, Dr. Zeliger indicated that he had reached his conclusions after conducting online research to locate the Material Safety Data Sheets (MSDSs) for the particular chemicals used in the serum and their respective ignition characteristics. Dr. Zeliger admitted that he did not consider or rule out the alternative possibilities that Davis's hair had caught on fire when it came into direct contact with the open flame on the gas stove or that the wooden handle of the comb contained a spark that had caused her hair to ignite. He further admitted that the two components of the serum,

SLIP OPINION

linalool and limonene, that he considered to have low autoignition temperatures, were a de minimis amount of the entire product, although he opined that the presence of these two chemicals was "not necessarily" irrelevant to the behavior of the serum as whole. According to Dr. Zeliger, he could not state with scientific certainty that the comb would ignite hair coated with the serum under the conditions described by Davis because he was unable to accurately test this hypothesis.

Appellees also attached to their summary-judgment motion a fire-investigation report by appellees' expert, Dr. Gregory Haussmann, in which he detailed the results of extensive testing that he had performed to demonstrate that the serum does not cause human hair to ignite when a heated pressing comb is applied under conditions similar to those described by Davis prior to the fire. Dr. Haussmann's report stated that the hair samples did not ignite during testing even when the comb was heated to a temperature of 850 degrees, a temperature high enough to cause the hair itself to melt onto the comb. Appellees further included a report by Dr. Christine Wood, appellees' human-factor expert, concluding that it was reasonable and appropriate for the serum not to have a combustibility warning and that the directions on the bottle of serum played no causal role in the fire causing injury to Davis.

Wal-Mart also filed a supplemental motion for summary judgment, arguing that it was only the seller, not the manufacturer, of the serum and that appellants had failed to show that it knew or had reason to know that the serum was defective or dangerous. Wal-Mart attached its discovery responses indicating that it did not perform testing on the serum; that it had no documents in its possession relating to any third-party testing of the product; that

4

it relies on the packaging, warnings, instructions, and precautions provided by its suppliers; and that it had not received any consumer complaints about the serum before Davis was injured.

In their response to the summary-judgment motion, appellants attached excerpts from the deposition of L'Oreal's vice president of Analytical Chemistry and Microbiology, Dr. Henry Kalinoski, who acknowledged that the serum contained certain ingredients that could be characterized as hazardous and that the serum could be considered to be combustible with its flash point of 170 degrees. Appellants also attached material from the report and deposition of their expert, Dr. Zeliger, who opined that the serum itself was a combustible product; that some components of the product were combustible and others were flammable; that the serum contained components with low auto-ignition temperatures; that the combustible components of the product can readily ignite when heated to 170 degrees, a temperature readily obtained when either a hair dryer or a hot comb is used on one's hair; that any flammable components of the product increase the potential for fire when the product is exposed to an ignition source; that some components of the product will auto-ignite when subjected to temperatures above the mid-450s and that such temperatures are readily available when a hot comb is used to heat the hair; that it is foreseeable that a hot comb, such as the one used by Davis, would be used in combination with the serum to straighten the hair; that the fire in Davis's hair was caused by the propensity of the serum to ignite when subjected to heat of the magnitude expected from its recommended use; and that L'Oreal had failed to provide any warnings on its label that would alert the user to the

flammable, combustible, and auto-ignition potential of the product. In addition, appellants attached to their response the serum's label, the officialization and safety certificate of the product, and documented complaints of various adverse reactions reported by consumers following use of the serum. Based on this material, appellants argued that there were material issues of fact remaining to be resolved and that summary judgment in favor of appellees was inappropriate.

In their reply to appellants' response, appellees argued that summary judgment was appropriate if the circuit court agreed with any of the four following statements: (1) appellees' previously filed motion in limine to exclude the expert-opinion testimony of Dr. Zeliger should be granted; (2) under the relevant federal regulations, regulatory guidance, and expert testimony, the serum was not defective for lack of a warning because it was not flammable or combustible; (3) even assuming, arguendo, that the serum was combustible, appellants failed to establish that the serum, as opposed to any number of likely alternative causes, was the proximate cause of Davis's injury; or (4) appellants lacked the necessary expert testimony regarding the proper labeling.

On January 28, 2015, a letter opinion was filed by the circuit court in which it set forth detailed findings in support of its decision to grant appellees' joint motion for summary judgment and Wal-Mart's supplemental motion for summary judgment. The court found that appellants had failed to meet proof with proof to show that the serum was defective or that it contributed to the incident, and the court concluded that reasonable persons could not disagree that the serum was not the cause of the accident. The court also ruled that the

parties' motions in limine were moot due to its decision to grant the motions for summary judgment.

A formal order granting appellees' motions for summary judgment and dismissing appellants' complaint was entered on February 3, 2015. The circuit court found that appellees were entitled to judgment as a matter of law on all of appellants' claims because there were no genuine issues of material fact regarding whether the serum contributed to the accident, whether the serum was defective or unreasonably dangerous, whether the label was inadequate, and whether appellees knew or should have known in light of surrounding circumstances that their conduct would naturally or probably result in injury, bodily harm, or distress. The court further stated that the opinion of appellants' expert on causation was conclusory and that it was unsupported by any evidence in the form of testing or otherwise. With regard to Wal–Mart's supplemental motion for summary judgment, the circuit court found that it was further entitled to summary judgment for the additional and independent reasons set out in its motion. On February 27, 2015, appellants filed a timely notice of appeal from the circuit court's order.

Summary judgment is to be granted by the trial court only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *McGhee v. Ark. State Bd. of Collection Agencies*, 368 Ark. 60, 243 S.W.3d 278 (2006). In reviewing a grant of summary judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* This court

7

views the evidence in the light most favorable to the party against whom the motion for summary judgment was filed and resolves all doubts and inferences against the moving party. *Id.*

On appeal, appellants argue that the circuit court erred by granting summary judgment because it ignored evidence that was favorable to them and because questions of material fact remain to be decided on each of their claims. These arguments will be addressed below in the context of each specific claim.

*I. Strict Products-Liability Claims*

In order for a plaintiff to recover under a theory of strict liability, he or she must prove both (1) that the product was in a defective condition when it left the defendant's control such that it was unreasonably dangerous and (2) that the defective condition was a proximate cause of the plaintiff's injury. Ark. Code Ann. § 4-86-102(a) (Repl. 2011); *Madden v. Mercedez-Benz USA, Inc.*, 2016 Ark. App. 45, 481 S.W.3d 455. A "defective condition" is one that renders a product unsafe for reasonably foreseeable use and consumption. Ark. Code Ann. § 16-116-102(2) (Repl. 2011).

There are three general varieties of product defects: manufacturing defects, design defects, and inadequate warnings. *West v. Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608 (1991). Although appellants pled two separate claims of strict liability with regard to the serum, a design-labeling defect and a failure-to-warn defect, it is apparent from their allegations that both of these claims are premised on the inadequacy of the serum's label and the lack of any warnings as to the alleged flammable and/or combustible nature of the product. This is

further demonstrated by the testimony of their expert, Dr. Zeliger, wherein he agreed that if the serum had what he considered to be an adequate warning, then he would not be of the opinion that the serum was defectively designed. Thus, both Counts I and III of the complaint relate to whether there was a product defect based on inadequate labeling, and both claims may be considered together.

The circuit court granted summary judgment on these claims based on appellants' failure to meet proof with proof, both with regard to the serum's alleged defective condition and the issue of proximate cause. If a plaintiff fails to meet proof with proof on any essential element of his or her claim, then the movant is entitled to summary judgment. *Bushong v. Garmen Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992); *Lee v. Martin*, 74 Ark. App. 193, 45 S.W.3d 860 (2001). Because, as we will discuss below, we agree with the circuit court that summary judgment was proper based on appellants' failure to meet proof with proof on the essential element of causation, there is no need to discuss whether summary judgment was also appropriate on appellants' claim that the serum was defective and unreasonably dangerous.

Our supreme court discussed the issue of causation in the context of strict products liability in *Southern Co., Inc. v. Graham*, 271 Ark. 223, 225–26, 607 S.W.2d 677, 679 (1980) (quoting William L. Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 32 ATL L.J., at 21 (1968)):

> Strict liability eliminates both privity and negligence; but it still does not prove the plaintiff's case. He still has the burden of establishing that the particular defendant has sold a product which he should not have sold, and that it has caused his injury. This means that he must prove, first of all, not only that he has been injured, but that he has been injured by the product. The mere possibility that this may have occurred is not enough, and there must be evidence from which the jury may reasonably conclude

that it is more probable than not . . . .

Appellants argue that they were not required to eliminate all other possible causes of the fire because they supplied direct proof that the serum was supplied in a defective condition. *See id.* at 226, 607 S.W.2d at 679 (In the absence of direct proof of a specific defect, the plaintiff must negate other possible causes of failure of the product not attributable to the defendant.). Even assuming that appellants did so, however, they still had to meet proof with proof on the issue of causation and show that it was more than a mere possibility that the serum caused Davis's hair to ignite. As the court further stated in *Southern Co., Inc. v. Graham*,

> Strictly speaking, since proof of negligence is not in issue, res ipsa loquitur has no application to strict liability; but the inferences which are the core of the doctrine remain, and are no less applicable. The plaintiff is not required to eliminate all other possibilities, and so prove his case beyond a reasonable doubt. As on other issues in civil actions, it is enough that he makes out a preponderance of probability. It is enough that the court cannot say that reasonable men on the jury could not find it more likely than not that the fact is true.

*Id.* (quoting William L. Prosser, *Handbook on the Law of Torts* § 102, at 672 (4th ed. 1971)). Thus, causation cannot be based on mere conjecture and speculation. *Id.*

Appellants alleged in their complaint that testing had shown that when a hot comb was used on hair treated with the serum, the hair began to smoke. Appellants' expert, Dr. Zeliger, also wrote a report in which he opined that the serum caused Davis's hair to ignite when the hot comb was applied and that appellees' failure to warn her of this danger was the proximate cause of her injuries. In their motion for summary judgment, however, appellees presented a report from their own expert, Dr. Haussmann, who had performed laboratory testing in an

10

attempt to replicate the fire under conditions similar to those described by Davis. Dr. Haussman's report stated that, despite using curly African-American hair similar to Davis's, testing showed that the hair containing the serum did not ignite when a hot comb was applied, even when the comb was heated up to 850° F; instead, Dr. Haussmann indicated that the hair began to melt onto the comb at that high of a temperature. The report concluded that "[i]gnition of the Product by a hot pressing comb has been eliminated as a potential source of ignition for this accident." The report further noted there were two potential alternative sources of ignition: (1) smoldering or a small flame on the wooden handle of the comb or (2) the open flame on the gas stove top.

In addition, appellees attached portions of Dr. Zeliger's deposition showing that he was unaware of the charred wooden handle of the comb and that he had not considered it as a possible source of ignition; nor had Dr. Zeliger inspected the gas stove or considered it as an alternative ignition source. Dr. Zeliger admitted that he relied solely on his review of the MSDSs for the serum's components in order to reach his opinion on causation, and he claimed that he was unable to test his hypothesis because it was impossible to replicate the exact conditions. He further stated that it was not relevant to his opinion that Chandler had straightened Davis's hair in the same manner and with the same serum on at least one prior occasion without incident, nor was it relevant that there were no other reports of serum-treated hair catching fire prior to the incident in question.

While appellants responded to the motion for summary judgment by attaching additional material such as deposition excerpts, the serum's label and safety certificate, and

documentation of other adverse effects from consumers following use of the serum, none of this additional material rebutted appellees' proof regarding appellants' failure to adequately establish proximate cause. Even when viewed in the light most favorable to appellants, their evidence merely established that there were several possible sources of ignition of Davis's hair during the incident, and causation may not be based on mere conjecture or speculation. *See Southern Co., Inc.*, 271 Ark. 223, 607 S.W.2d 677; *Hamilton v. Allen*, 100 Ark. App. 240, 267 S.W.3d 627 (2007). Because appellants failed to meet proof with proof and show that the alleged propensity of the serum to ignite was the more probable cause of Davis's injuries, the circuit court was correct in granting summary judgment as to appellants' strict-liability claims. We therefore affirm the dismissal of Counts I and III of the complaint against both appellees.

## II. Negligent-Failure-to-Warn Claim

In Count IV of appellants' complaint, they alleged that appellees had negligently failed to warn them of the flammable/combustible nature of the serum. According to Arkansas Model Jury Instruction–Civil 1002, a manufacturer of a product has a duty to give a reasonable and adequate warning of dangers inherent or reasonably foreseeable in its use, and a violation of this duty is negligence. However, as in the strict-liability claims discussed above, even assuming that appellees had a duty to warn of the combustibility of the serum given its intended or foreseeable use, appellants were still required to show that this failure to warn was the proximate cause of Davis's injuries. *See Hergeth, Inc. v. Green*, 293 Ark. 119, 733 S.W.2d 409 (1987). Because we have previously determined that appellants failed to meet proof with proof on this issue, the circuit court was correct in granting summary judgment

12



to appellees on this claim as well.

### III. Intentional Infliction of Emotional Distress (IIED)

In Count V of her complaint, appellants alleged a claim for IIED based on appellees' actions in manufacturing and/or selling the serum without adequate warnings. In order to prove the intentional tort of IIED, or outrage, a plaintiff must prove the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his or her conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *FMC Corp., Inc. v. Helton*, 360 Ark. 465, 202 S.W.3d 490 (2005).

Again, appellants' failure to meet proof with proof on the issue of whether the serum was the proximate cause of Davis's injuries also defeats their claim for IIED, as they cannot prove that the actions of appellees were the cause of their distress. While the circuit court based its grant of summary judgment on appellants' failure to show that appellees knew or should have known that their conduct would naturally or probably result in emotional distress, we may affirm the circuit court if it reached the right result, even though it announced a different reason. *West v. Searle & Co., supra.* We therefore affirm the dismissal of Count V of the complaint.



*IV. Breach-of-Warranty Claims*

Appellants also briefly argue that their claims for breach of the express and implied warranties of merchantability and fitness should have been presented to the jury. In order to recover on these claims, however, appellants were again required to show that the breach, i.e., the alleged unfitness of the product or its unmerchantable condition, was the proximate cause of Davis's injuries. *E.I. Du Pont de Nemours and Co. v. Dillaha*, 280 Ark. 477, 659 S.W.2d 756 (1983). Because appellants failed to meet proof with proof on this issue, summary judgment was also appropriate on Count II of the complaint.

Appellants further argue with respect to all of their claims that the circuit court improperly weighed the evidence and ignored evidence favorable to them in reaching its decision. Appellants are correct that it is not permissible for a trial court to weigh evidence or make credibility determinations in deciding whether to grant summary judgment. *Turner v. Nw. Ark. Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 133 S.W.3d 417 (2003). However, based on our conclusion, after applying the appropriate standard of review, that the circuit court was correct in granting summary judgment to appellees, appellants cannot prevail on this point even if they were to demonstrate error. Furthermore, we note that the circuit court in this case specifically noted in its letter order that it had "read the Plaintiff's response, briefs and exhibits very carefully"; that it had "tried to find evidence that this tragic accident was caused by the Defendant's serum"; and that it had "considered time and time again the submissions in the light most favorable to the Plaintiff and simply could not find sufficient evidence or agreement that would cause the Court to believe that reasonable people could

not differ, or that there was even a question of fact to be submitted." Thus, we find no merit to appellants' argument.

Finally, appellants contend that summary judgment was inappropriate on their claim for punitive damages. The complaint requested punitive damages based on the allegation that appellees knew or should have known that their conduct would result in injury and that they continued to market and sell the serum in reckless disregard of the consequences. However, based on our decision to affirm the dismissal of all of appellants' claims against appellees, there is no basis for an award of punitive damages. *See Bayer CropScience LP v. Schafer*, 2011 Ark. 518, 385 S.W.3d 822 (Actual or compensatory damages are a necessary predicate for the recovery of punitive damages.). Accordingly, we affirm the circuit court's order granting summary judgment to appellees and dismissing appellants' complaint with prejudice.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.

*Appellate Solutions, PLLC, d/b/a Riordan Law Firm*, by: *Deborah Truby Riordan*; and *Kelley Law Firm, P.C.*, by: *Kevin Kelley* and *Michael Crozier*, *pro hac vice*, for appellant.

*Quattlebaum, Grooms & Tull PLLC*, by: *Steven W. Quattlebaum*, *E. B. Chiles IV*, and *Sarah Keith-Bolden*, for appellees.