Cite as 2020 Ark. App. 231

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-665

|  |  |
|---|---|
| | **Opinion Delivered** April 15, 2020 |
| BANK OF THE OZARKS, INC., AS ADMINISTRATOR OF THE ESTATE OF REBECCA SMITH, DECEASED; NICHOLAS METCALF; AND BRAXTON METCALF-SMITH, A MINOR, BY AND THROUGH HIS NEXT FRIENDS AND LEGAL GUARDIANS, BETTY BRONKEMA AND ROBERT BRONKEMA | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43CV-17-659] |
| | HONORABLE SANDY HUCKABEE, JUDGE |
| APPELLANTS | |
| V. | |
| FORD MOTOR CO.; KENNETH SCOTT STOLL D/B/A WHEEL WORLD, INC.; LEWIS FORD SALES, INC.; EVERETT BUICK GMC OF NORTHWEST ARKANSAS, LLC; ATKINS AUTO REPAIR, LLC D/B/A THE GREASE PIG LUBE & TUNE; ATKINS OIL, LLC D/B/A THE GREASE PIG LUBE & TUNE; LITTLE ROCK CDJ, INC.; C AND C MOTORS, LLC; MICHAEL BATTIE; AND SEAN BATTIE | |
| | AFFIRMED |
| APPELLEES | |

## N. MARK KLAPPENBACH, Judge

This appeal concerns a lawsuit filed after a single-vehicle rollover accident on September 10, 2014, in which the driver (Rebecca Smith) was killed and the passengers (her boyfriend Nicholas Metcalf and their infant son Braxton Metcalf-Smith) were injured.

At the time of the accident, the 2002 Ford Explorer had 22" wheels and tires instead of the factory-recommended 16" wheels and tires. As relevant here, appellants alleged in their complaint that (1) the manufacturer and sellers of the Explorer were liable for introducing this defectively designed product into the public and failing to warn of the inherent design defects that made this vehicle unreasonably dangerous, and (2) the entities that manufactured, sold, or provided maintenance or equipment on the vehicle had a duty to warn consumers of the enhanced danger associated with using the 22" wheels and tires and failed in that duty, resulting in the rollover accident and its consequences.

The focus of this appeal is the entry of summary judgment in favor of separate defendant Little Rock CDJ, Inc. (a/k/a Little Rock Chrysler, Dodge, Jeep, Inc., referred to as CDJ), on appellants' complaint that CDJ was negligent and strictly liable for selling a defective and unreasonably dangerous product.[1] The circuit court granted summary judgment to CDJ reasoning that (1) the negligence claim failed because CDJ did not sell the Explorer to Nicholas and owed no duty to Nicholas to warn him of any alleged defective condition, (2) the negligence claim also failed because the three-year statute of limitations

---

[1]To briefly give context, appellants filed suit against Ford (the manufacturer); Wheel World, Inc. (the business that sold and installed four non-factory wheels and tires on this Explorer for the prior owner in 2007); Lewis Ford and Everett (dealerships involved prior to Nicholas's purchase); CDJ (the dealership that accepted the prior owner's trade in of the Explorer and then sold the Explorer to C & C Motors, all in February 2013); C & C Motors (the dealership from which Nicholas purchased the vehicle in March 2013); The Grease Pig (automotive maintenance and repair shop that provided Nicholas maintenance and repair services after he purchased the Explorer); Michael Battie (Rebecca's brother-in-law and driver of the Sierra truck that was in front of the Explorer on the date of the accident); and Sean Battie (owner of the Sierra truck). The circuit court entered summary judgment in favor of separate defendant CDJ and executed a proper Rule 54(b) certificate required by Arkansas Rule of Civil Procedure 54 to justify immediate appeal of the summary-judgment order.

2

had run on any negligence claim, and (3) the strict products-liability claim against CDJ failed because there was no proof of a specific defect on this Explorer nor was there substantial evidence negating other possible causes of the accident. We affirm.

The law is well settled regarding the standard of review used by our appellate courts in reviewing a grant of summary judgment. *Muccio v. Hunt*, 2016 Ark. 178, 490 S.W.3d 310. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id*. The burden shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. *Id*. After reviewing the evidence, the circuit court should deny summary judgment if, under the evidence, reasonable minds could reach different conclusions from the same undisputed facts. *Id*.

We first address the entry of summary judgment on the negligence claim against CDJ. The dispositive issue is the statute of limitations. The facts and evidence relevant to that issue are not in dispute and are simplified here for clarity.

Appellants began with the premise that the 1991 through 2002 model years for the Ford Explorer were designed and manufactured with inherent defects and deficiencies that made the vehicle's center of gravity too high and made the vehicle more prone to rollover accidents, particularly when the driver used emergency turning maneuvers. The 2002 model of the Ford Explorer was factory equipped with 16" wheels and tires, which were the recommended size for this vehicle. Twenty-two-inch wheels and tires were not

recommended by the manufacturer. According to appellants, 22" wheels and tires further increased the likelihood of a rollover accident.

In 2007, Angela Witt purchased this Explorer from an automotive dealership in Searcy, Arkansas. Also in 2007, Angela bought 22" wheels and tires from Wheel World, Inc., and had them installed; she bought the wheels and tires "purely for cosmetic reasons."

On February 6, 2013, Angela bought a vehicle from CDJ, trading in the 2002 Ford Explorer in partial exchange for her purchase. The Explorer still had the 22" wheels and tires, and its odometer read 132,950 miles. CDJ did not have its service shop inspect or do any repairs on the Explorer; it was not going to resell this vehicle to an individual. On February 19, 2013, CDJ sold the Explorer in a wholesale transaction, "as is" with no warranty, to C & C Motors, LLC, a North Little Rock dealership.

On March 8, 2013, C & C sold the Explorer, "as is" with no warranty, to Nicholas. Very soon thereafter, Nicholas took the Explorer to a shop that sold tires and had at least two of the tires replaced with similar tires. Nicholas was not sure if he replaced two or all four tires, and if he replaced two, it was unclear which two were replaced. Nicholas had some basic repair and maintenance done on the Explorer at some point before the accident, including replacing the engine, replacing a thermostat housing, and changing the oil. Nicholas's girlfriend Rebecca occasionally drove the Explorer.

The rollover accident occurred on September 10, 2014, a year and a half after Nicholas bought the Explorer. Michael Battie had agreed to move a basketball goal for his sister-in-law, Rebecca, and that afternoon, the basketball goal was loaded into the back of

a Sierra pickup truck. Michael drove the truck; Rebecca drove the Explorer, with Nicholas and their eight-week-old son Braxton as passengers.

The truck was in front of the Explorer near Ward, Arkansas, on Highway 67, when the basketball goal fell out of the truck bed and in front of the Explorer. Rebecca was driving approximately seventy miles per hour. Rebecca swerved to avoid hitting the basketball goal, driving out of her lane and then turning the vehicle back onto the road, and the Explorer overturned several times. Rebecca was ejected from the vehicle and died. Nicholas and Braxton were not ejected but were injured.

Appellants filed their complaint on August 31, 2017, within three years of the accident. The negligence claim against CDJ was grounded in the allegation that CDJ allowed "the Explorer to be sold to the public and ultimately to Plaintiff [Nicholas], with improper tires and wheels without warnings, instructions or other steps to avoid the danger." CDJ filed a motion for summary judgment arguing, in part, that the three-year statute of limitations (SOL) had expired because any alleged negligence on CDJ's part had to have occurred on or before it sold the Explorer to C & C, which was in February 2013. This, CDJ argued, meant that the SOL expired no later than February 2016, approximately eighteen months before the complaint was filed. CDJ further provided an affidavit to support that CDJ had conveyed the Explorer in a wholesale transaction "as is" with no warranty to C & C, which was another automotive dealership, not to Nicholas, so CDJ owed no duty to Nicholas to warn of any allegedly dangerous condition.

Appellants resisted the SOL defense offered by CDJ, arguing that it was the rollover accident that triggered the running of the SOL because they had no cause of action to pursue

5

until they sustained damages due to CDJ's negligence. The circuit court found that the date of the negligent act (commonly known as the "occurrence rule") controlled and that there was no question of fact remaining on that issue. The circuit court, consequently, granted summary judgment to CDJ because the SOL had run, barring the complaint against CDJ for negligence. Appellants argue on appeal that this is in error because the proper accrual date is the date of the accident and that the occurrence rule applies only in those cases in which professional malpractice has been alleged. We disagree with appellants.

The statutory-limitations period begins to run when there is a complete and full cause of action, and, in the absence of concealment of the wrong, when the alleged wrongful act occurs, not when it is discovered. *See Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 365 Ark. 106, 110, 225 S.W.3d 369, 372 (2006). The "occurrence rule" has a long history in Arkansas dating back to 1877, and prior attempts by litigants to have this rule changed by caselaw have been unsuccessful. We have previously observed that in order to accept the argument urged by appellants, Arkansas would have to abandon the occurrence rule and adopt the so-called "date of injury" rule. *See Hill v. Hartness*, 2017 Ark. App. 664, 536 S.W.3d 649. Our supreme court has expressly refused to abrogate the occurrence rule and adopt the date-of-injury rule; thus, the occurrence rule remains for negligence actions. *See Moix-McNutt v. Brown*, 348 Ark. 518, 522, 74 S.W.3d 612, 614 (2002) (holding that although appellant argued that common sense required that a plaintiff actually suffer a loss or damages arising out of the negligent act before a cause of action arose, this was precisely the argument that the supreme court had repeatedly rejected); *see also Gunn v. Farmers Ins. Exch.*, 2010 Ark. 434, at 9, 372 S.W.3d 346, 353 (explaining the supreme court's rejection

of continuing tort theory); *Tate v. Lab. Corp. of Am. Holdings*, 102 Ark. App. 354, 285 S.W.3d 261 (2008) (holding that three-year statute of limitations barred putative father's negligence claim against medical laboratory for false positive paternity test, the statute commencing when the blood test showed probability of paternity, not when a years-later DNA test excluded him as father; occurrence rule, rather than discovery rule, applied).

In their negligence claim, appellants alleged that CDJ was negligent in allowing this Explorer to be sold to Nicholas "with improper tires and wheels without warnings, instructions or other steps to avoid the danger." Any purported negligent failure on CDJ's part to inform Nicholas would have to have occurred in February 2013, and the SOL expired on CDJ's alleged negligence long before this lawsuit was filed. (Even had the date of CDJ's alleged negligence extended to March 2013, when Nicholas purchased the Explorer from C & C, that, too, falls well outside the three-year-statute of limitations.) We hold that the circuit court did not err in granting summary judgment to CDJ on the negligence claims. This renders moot any discussion of whether CDJ had a duty to warn Nicholas of any allegedly defective or dangerous condition.

We now consider whether the circuit court erred in granting summary judgment to CDJ on the appellants' "Strict Liability/Product Liability" claim against CDJ.[2] In the complaint, appellants alleged in relevant part:

---

[2]In product-liability cases, Arkansas courts apply the discovery rule for determining the date that the SOL commences to run. *See Martin v. Arthur*, 339 Ark. 149, 159, 3 S.W.3d 684, 690 (1999); *IC Corp. v. Hoover Treated Wood Prod., Inc.*, 2011 Ark. App. 589, 385 S.W.3d 880; s*ee also* Ark. Code Ann. § 16-116-203 (Repl. 2016) (three-year statute of limitations shall commence from the date of the death, injury, or damage complained of). In this case, the commencement of the SOL was the date of the accident.

19.

Absent ordinary wear and tear, including foreseeable use, the subject Explorer was in substantially the same condition at the time of the crash as it was when it left Ford's possession.

20.

The Explorer was defective and unreasonably dangerous at the time it was manufactured and supplied by Ford, Lewis, Everett, LR-CDJ and C&C. . . . The defects included design defects, manufacturing defects, marketing defects, and defects in warnings, all of which combined to be a cause and/or contributing cause of the fatal collision. . . . The dangers referenced earlier were reasonably foreseeable or scientifically discoverable at the time of exposure.

21.

Ford had both actual and objective knowledge at the time of production of the Explorer Sport in question that the design was unreasonably dangerous, defective, and not fit for ordinary use as marketed. Ford marketed the vehicle for consumer use at freeway speeds. Lewis, Everett, LR-CDJ and C&C knew or should have known of these defects. The accident scenario here, including the need for an emergency evasive maneuver, was known by Ford, and the dealers, to be common, routine, expected, and reasonably foreseeable. Ford was also aware of studies of human capabilities in terms of steering and braking in foreseeable evasive maneuvers, yet designed the Explorer so that [it] was unreasonably dangerous when in the hands of a consumer given these circumstances.

Appellants alleged that CDJ was strictly liable for supplying the defective and unreasonably designed and manufactured Explorer to the consuming public for use at freeway speeds, when it knew or should have known that Ford manufactured this dangerous and defective product in 2002.[3]

To recover under a theory of strict liability, a plaintiff must prove (1) that he or she sustained damages; (2) that the defendant was engaged in the business of manufacturing,

_____

[3]Notably, the *negligence* claim in the complaint was based on the presence of the larger wheels and tires, but the *products-liability* claim in the complaint was based on the allegation of Ford's flawed fundamental design and manufacture of this 2002 Ford Explorer. Our review is thus focused on whether it was proper for the circuit court to enter summary judgment on the products-liability cause of action as alleged against CDJ in the complaint.

8

assembling, selling, or leasing, or otherwise distributing the product; (3) that the product was supplied by the defendant in a defective condition that rendered it unreasonably dangerous; and (4) that the defective condition was a proximate cause of the plaintiff's damages. AMI-Civ. 1008. Arkansas Code Annotated section 16–116–101(a) and (b) (Repl. 2016) provide:

> (a) A supplier of a product is subject to liability in damages for harm to a person or to property if:
>
>> (1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product;
>>
>> (2) The product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and
>>
>> (3) The defective condition was a proximate cause of the harm to a person or to property.
>
> (b) The provisions of subsection (a) of this section apply although the claiming party has not obtained the product from or entered into any contractual relation with the supplier.

A finding of liability on the part of the manufacturer is not necessary for a supplier to be held liable for a defective product. *Madden v. Mercedes-Benz USA, Inc.*, 2016 Ark. App. 45, 481 S.W.3d 455.

CDJ did not design or manufacture this 2002 Ford Explorer, and CDJ is not a Ford dealership, but CDJ did accept this Ford Explorer as a trade-in from a customer and then sold it wholesale to another automotive dealership. The circuit court found that on the "strict liability/products liability" claim, appellants did not provide any direct proof of a specific defect on the vehicle at issue, and appellants did not present substantial evidence negating other possible causes of the accident.

Appellants have failed to demonstrate reversible error in granting CDJ summary judgment. We may affirm the circuit court if it reached the right result, even though it announced a different reason. *Chandler v. Wal-Mart Stores Inc.*, 2016 Ark. App. 372, 498 S.W.3d 766. We hold that appellants failed to meet the necessary threshold to survive summary judgment on the causation element in their strict-liability claim as required by Ark. Code Ann. § 16–116–101(a)(3).

Strict liability eliminates both privity and negligence, but a plaintiff still has the burden of establishing that a particular defendant has sold a product it should not have sold, and that the product caused his injury. *See Chandler, supra.* The mere possibility that the product caused the injury is not enough; there must be evidence from which the jury may reasonably conclude that it is more probable than not. *Id.* Causation cannot be based on mere conjecture and speculation. *Id.* Proximate cause is that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred. *See Thomas v. Meadors*, 2017 Ark. App. 421, 527 S.W.3d 724.

The engineering expert provided an affidavit stating that this 2002 Ford Explorer had inherent design defects and that the use of the 22" wheels and tires made the Explorer even more prone to rollover accidents, like the one that happened here in 2014. The engineer went on to opine that "the Explorer has an inadequate margin of safety built into its design, especially in circumstances where it is foreseeable that alternate and non-approved tires might be used or even ignored by trained professionals." Undoubtedly, the plaintiffs presented evidence and urged the circuit court to accept that the wheels and tires that were

placed on this vehicle after it left the manufacturing plant were the defect and the cause of this rollover accident. This is underscored by the appellants' attorney, who argued at the summary-judgment hearing on the strict-liability claim as follows:

> [W]e allege that the defect in the car the date that they [CDJ] sold it was the fact that it was equipped with these nonspecified or oversized wheels or tires.

In sum, the wheels and tires on this vehicle were not the same ones that were on it when it left the factory, Nicholas purchased this vehicle approximately eleven years after its manufacture, Nicholas had maintenance and repair work done and replaced at least two of the tires, the rollover accident happened in 2014, and appellants' attorney emphasized that "the defect" in this product was its being equipped with inappropriate wheels and tires when it left CDJ's possession in 2013. In contrast, the strict products liability cause of action in the complaint against CDJ was that CDJ knew that the original design of this 2002 Ford Explorer was unreasonably dangerous, which caused this rollover accident. The evidence and arguments focused causation on the later-added wheels and tires, not the inherent design of this vehicle.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Turner & Associates, P.A.*, by: *Tab Turner*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *Michael McCarty Harrison* and *Kimberly D. Young*, for separate appellee Little Rock Chrysler, Dodge, Jeep, Inc.