

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-63

| | |
|---|---|
| EILEEN MADDEN<br><br>                         APPELLANT<br><br>V.<br><br>MERCEDES-BENZ USA, INC. ET AL.<br>                         APPELLEES | Opinion Delivered  JANUARY 27, 2016<br><br>APPEAL FROM THE JACKSON COUNTY CIRCUIT COURT<br>[NO. CV-2007-88]<br><br>HONORABLE HAROLD S. ERWIN, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, JUDGE**

This appeal arises out of an automobile collision where appellant Eileen Madden was ejected from her vehicle and sustained serious injuries. Madden sued the manufacturers and sellers of her vehicle and its seatbelt in the Jackson County Circuit Court alleging that her seatbelt was defective, that the defect caused her seatbelt to come unlatched during the collision, and that this defect proximately caused her injuries. She appeals from orders granting summary judgment to the manufacturers and sellers of her automobile and its seatbelt. We affirm.

I. *Facts*

Madden and her now-deceased husband, Norman, bought a used 1998 Mercedes-Benz ML320 automobile from Little Rock Wholesale in October 2004. The Bill of Sale indicated that they bought the vehicle "as is." Prior to the purchase, the vehicle's seatbelt buckle was the subject of a recall campaign. The campaign was initiated after a

determination that the seatbelt buckle tabs in these vehicles had potentially been improperly staked during the manufacturing process, and the improper staking could cause the seatbelt buckle to unlatch. Pursuant to the recall campaign, this vehicle was inspected by Scott Reid in August 2003; he determined that the defect was not present. This is pertinent because on 20 March 2007, while driving the vehicle, Madden had an automobile collision with Christopher Taylor. Madden was ejected from the vehicle and was seriously injured. Although Madden maintains that she habitually wore her seatbelt—and there is evidence indicating that her injuries are consistent with seatbelt usage—the police report from the collision indicated that she was not wearing a seatbelt.

Madden spent many weeks receiving acute care for her injuries. During that time, the vehicle was determined to be a total loss, and Norman transferred the title of the vehicle to their insurance carrier on 17 April 2007. The insurance carrier then scrapped and sold the vehicle. This sale occurred without an inspection of the vehicle or its seatbelt for potential defects.

Madden filed her initial complaint on 24 May 2007, suing only Christopher Taylor for negligence.[1] Later, Madden amended her complaint to include additional defendants; Mercedes-Benz US International, Inc., Mercedes-Benz USA, LLC,[2] TRW Vehicle Safety

---

[1] Taylor was served, and he defaulted on the complaint. On 15 October 2014, a default judgment was entered against him, and he is not a party in this appeal.

[2] Mercedes-Benz US International, Inc. and Mercedes-Benz USA, LLC (collectively referred to as Mercedes) manufactured, distributed, and/or sold Madden's vehicle.

Systems, Inc.[3], Little Rock Wholesale, Robert Vowell, and Sandra David[4]. She pursued causes of action for negligence, products liability, and breach of warranty against Mercedes, TRW, and the LRW defendants alleging that her vehicle's seatbelt was defective, the defect caused her seatbelt to become unlatched during the collision, and the defect proximately caused her injuries.

On 15 October 2012, Mercedes and TRW filed a joint motion for summary judgment seeking the dismissal of all of Madden's claims against them. Mercedes and TRW generally argued that the presence of a defect was a necessary element of each of her claims and that she failed to offer evidence of a defect in the seatbelt attributable to either of them. The circuit court granted Mercedes and TRW's joint motion for summary judgment on 24 June 2014. On 21 July 2014, Madden filed a motion for clarification of this order. In her motion, she asked whether the court intended to grant summary judgment to Mercedes and TRW on the breach of warranty claims. The court answered that its original order granted summary judgment to Mercedes and TRW on all claims, including the breach-of-warranty claims, in an order dated 15 October 2014.

The LRW defendants moved for summary judgment on 30 June 2014. They adopted by reference the motion for summary judgment filed by Mercedes and TRW and all exhibits attached to it. Like Mercedes and TRW, they argued that Madden could not

---

[3] TRW Safety Vehicle Safety Systems, Inc. (TRW) supplied the seatbelt for Madden's vehicle.

[4] Little Rock Wholesale, Robert Vowell, and Sandra David (collectively referred to as the LRW defendants) were sued because of their role in selling the vehicle to Madden and her husband.

prove a defect in the vehicle attributable to them. Additionally, LRW defendant Robert Vowell asserted that he was not a proper defendant in this action because he neither bought nor sold the vehicle. This motion was granted in its entirety in an order entered on 16 October 2014. Madden's timely appeal of the orders granting summary judgment to Mercedes, TRW, and the LRW defendants on all claims followed.

## II. *Standard of Review*

On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 991 S.W.2d 552 (1999). Once the moving party has established prima facie entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. The court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Meadors v. Still*, 344 Ark. 307, 40 S.W.3d 294 (2001). A court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law. *Mitchell v. Lincoln*, 366 Ark. 592, 237 S.W.3d 455 (2006).

## III. *Summary Judgment in Favor of Mercedes and TRW*

Madden challenges the circuit court's order granting summary judgment in favor of Mercedes and TRW arguing that (1) she submitted proof that Mercedes and TRW supplied

the seatbelt in a defective condition, and (2) the circuit court improperly granted summary judgment on her breach of warranty claims.

### A. The Products-Liability Claim

To prevail in a products liability case against a supplier, a plaintiff bears the burden of proving both (1) that the product was defective when it left the defendant's control such that it was unreasonably dangerous and (2) that the defect caused the injury. Ark. Code Ann. § 4-86-102 (Repl. 2011); *Higgins v. Gen. Motors Corp.*, 287 Ark. 390, 699 S.W.2d 741 (1985). For our purposes, the key question is whether the seatbelt was defective when it left the control of Mercedes and TRW.

The facts of this case make it difficult to establish a factual dispute on the presence of a defect. The vehicle and its seatbelt are no longer available, and they were never inspected by an expert for any party. In the absence of direct proof that the product is defective because of a manufacturing flaw, Arkansas law requires that Madden offer "substantial evidence" that "negates other possible causes of failure of the product not attributable to the defendant." *Higgins*, *supra*. "Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or another. It must force or induce the mind to pass beyond suspicion and conjecture." *Id*. Madden is not required to eliminate all other possibilities—and she need not prove her case beyond a reasonable doubt—but she must present evidence from which a jury can conclude that it is more probable than not that this occurred. *Id*.

The burden of sustaining a motion for summary judgment always rests with the moving party. *New Maumelle Harbor*, *supra*. Mercedes and TRW established a prima facie

entitlement to summary judgment by attaching to their motion the police report from the collision indicating that Madden was not wearing her seatbelt, information indicating that the vehicle was no longer available for inspection, and records from Scott Reid's 2003 inspection of the vehicle showing that a defect in the seatbelt was not found. Most notably, Mercedes and TRW also relied on Madden's own expert's testimony to negate the presence of a defect attributable to them. Specifically, Madden's expert, Gerald Barnett, testified that he would have to be "a psychic" to determine whether a seatbelt-latch problem existed when the vehicle was new or whether it was introduced later. Because Mercedes and TRW's joint motion for summary judgment established a prima facie entitlement to summary judgment, the burden shifted to Madden to present some evidence of a defect attributable to Mercedes and TRW.

To begin, Madden clearly calls into question whether she was wearing her seatbelt during the collision. She testified that it was her habit to wear it, and Dr. Frank Peretti, testifying in his role as the associate medical examiner at the Arkansas State Crime Laboratory, stated that her injuries were consistent with seatbelt usage. Nevertheless, evidence that Madden's seatbelt came unlatched during the collision does not, in and of itself, equate to evidence of a defect when the seatbelt was manufactured or supplied.

In an attempt to question the functionality of her seatbelt, Madden highlights the recall campaign for defective seatbelts that included her vehicle. The recall itself is insufficient evidence of a defect in the seatbelt. Scott Reid performed the recall inspection on the vehicle and found no defect present. He testified that he performed the inspection properly. Madden points out the short amount of time Reid dedicated to the inspection,

but she offers no evidence that his inspection was inadequate or improper. Gerald Barnett even testified that he had the opinion that Reid performed the buckle inspection properly.

The other evidence Madden relied on to refute Mercedes and TRW's motion for summary judgment primarily comes from her expert witness, Gerald Barnett. Barnett said through deposition testimony that he thought her seatbelt became unlatched during the collision and that a defect present at manufacturing can appear long after a seatbelt leaves a supplier's control. He attempted to negate the possibility that some action by Madden or another third party could have caused the seatbelt to unlatch when he testified that a foreign object or spill would have caused the seatbelt to not latch at all, but he later testified that a foreign object or spilled drink could cause a seatbelt to merely latch improperly. And, he testified that he could not answer whether the defective condition in the seatbelt buckle existed when the car came off the factory floor; he even stated that he'd have to be "a psychic" to know whether the defect was present at this time. Barnett also said he would need to examine the seatbelt to do more than speculate as to the cause of the belt unlatching.

In a motion for summary judgment, once the moving party establishes prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material fact. *New Maumelle Harbor, supra.* Here, Madden failed to place a material fact on an element of her claim in dispute. Even if she had worn her seatbelt during the collision and the seatbelt unlatched because of a defect, she cannot establish that this defect was present when it left Mercedes and TRW's control. The evidence she presented would require a jury to speculate regarding the cause of the alleged

defect.   Therefore, we affirm the circuit court's dismissal of Madden's products liability claims against Mercedes and TRW.

## B.   The Breach-of-Warranty Claims

Madden also argues that the breach of warranty claims were not properly raised by Mercedes and TRW in their motion for summary judgment nor were they properly decided by the court.   She contends that their motion for summary judgment does not specifically address the viability of her breach-of-warranty claims.

We disagree.   Here, Mercedes and TRW sought summary judgment on all claims by arguing that Madden failed to present any evidence of a defect when the vehicle was manufactured.   The existence of a defect is a common and necessary element for all of the claims, and without this evidence, Madden's case against Mercedes and TRW fails. Moreover, Madden's motion for clarification gave the circuit court the opportunity to consider whether summary judgment on the breach-of-warranty claims was proper; and it entered an order expressly granting judgment to Mercedes and TRW on her complaint as a whole.   We hold that the viability of Madden's breach-of-warranty claims was properly considered and ruled on by the circuit court.

With that determination made, we turn to whether summary judgment on the breach-of-warranty claims was appropriate.   Here, Madden argues that the burden for proving products liability is greater than that of breach of warranty.   However, breach of warranty and strict products liability claims are "essentially the same" insofar as both require a product defect attributable to the defendant.   *Higgins*, *supra*.   Mercedes and TRW consistently argue that summary judgment is appropriate because Madden failed to present

evidence of a defect, and the presence of a defect is a common element essential to both claims. We agree. A court is not required to address or negate every element of a claim. *Golden Tee, Inc. v. Venture Golf Schs., Inc.*, 333 Ark. 253, 969 S.W.2d 625 (1998). Mercedes and TRW offered argument and evidence to the circuit court on whether there was a defect, and a determination that there is no evidence of a defect is sufficient to resolve the outcome of each of the claims presented. We hold that the court did not err when it disposed of the breach-of-warranty claims against Mercedes and TRW.

IV. *Summary Judgment in Favor of the LRW Defendants*

Madden also raises several challenges to the court's order granting summary judgment to the LRW defendants. First, she contends that the court erred in granting summary judgment on her products liability claim against the LRW defendants because she submitted proof that the LRW defendants supplied the seatbelt in a defective condition. She also contends that the circuit court erred in granting summary judgment on her breach of warranty claims against the LRW defendants. For this point, she argues that (1) the LRW defendants waived any defense related to disclaimer of warranties, (2) the "as is" clause in the bill of sale was insufficient for the LRW defendants to disclaim all warranties, (3) the defective seatbelt amounted to a latent defect that could not be disclaimed, (4) her express-warranty claim was improperly dismissed, and (5) the claims against Robert Vowell were improperly dismissed because Sandra David was acting as his agent at the time of the sale of the vehicle.

A. The Products-Liability Claim

To establish a cause of action for products liability, Madden must prove that (1) when the LRW defendants sold the vehicle to her, a seatbelt defect was present that rendered her vehicle unreasonably dangerous, and (2) the defect proximately caused her injuries. Ark. Code Ann. § 4-86-102; *Higgins*, *supra*. A finding of liability on the part of the manufacturer is not necessary for a supplier to be held liable for a defective product. The facts and analysis on this issue as presented by the LRW defendants are essentially the same as those presented by Mercedes and TRW in their motion for summary judgment on the products liability claims against them.

The LRW defendants adopted the arguments and evidence presented by Mercedes and TRW in their motion for summary judgment and used that motion and its attached exhibits to establish prima facie entitlement to summary judgment. That evidence includes the testimony of Madden's expert, Gerald Barnett, wherein he, as we have noted already, stated that he would have to be "a psychic" to know when the alleged defect had occurred and that he would have to examine the seatbelt to do more than speculate as to the cause of the belt unlatching. Madden failed to offer any evidence that demonstrates the existence of a material fact that would allow a jury to move beyond speculation regarding the cause of the alleged defect. We affirm the court's order granting summary judgment on the products–liability claim against the LRW defendants.

B. The Breach-of-Warranty Claims

A preliminary issue raised by Madden is whether the LRW defendants waived any defense they had related to the disclaimer of warranties. She argues that the disclaimer of

warranties is an affirmative defense, and pursuant to Arkansas Rule of Civil Procedure 8(c), the LRW defendants were required to assert the defense in their answer. We disagree. Arkansas Code Annotated section 4-2-316 governs the disclaimer of warranties. Nothing in that statutory section indicates that the disclaimer of warranties is an affirmative defense, and Madden offers no authority for her argument that the exclusion or modification of warranties is an affirmative defense that is waived if not timely raised in a responsive pleading. In any event, the LRW defendants also reserved and pled all affirmative defenses available under Ark. R. Civ. P. 8(c) in their answer as a belt-and-suspenders approach.

Turning to the merits, we note that the exclusion or modification of warranties is governed by Arkansas Code Annotated section 4-2-316. The statutory sections pertinent to our review are as follows:

(3) Notwithstanding subsection (2):

(a)     unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(b)     when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(c)     an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

Ark. Code Ann. § 4-2-316(3) (Repl. 2001).

The bill of sale executed when Madden and her husband bought the vehicle from the LRW defendants provided that the seller warranted only good and marketable title to

11

the vehicle, and the property was "otherwise sold in 'as is' condition." Arkansas Code Annotated section 4-2-316(3)(a) provides that "all implied warranties are excluded by expressions like 'as is.'" Moreover, Madden and her husband acknowledged that they knew the vehicle was sold "as is."

Although the inclusion of the "as is" clause in the bill of sale seems to settle the issue of whether the LRW defendants made any warranties to Madden, she argues otherwise. She contends that Ark. Code Ann. § 4-2-316(3)(b) imposes an additional requirement necessary to disclaim all implied warranties. That section provides that "when the buyer before entering into the contract has examined the goods or sample or model as fully as she desires or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him." Ark. Code Ann. § 4-2-316(3)(b). Madden argues that the conjunction "and" in Ark. Code Ann. § 4-2-316(3)(a) & (b) requires that the LRW defendants prove both the existence of an "as is" clause and that the buyer examined the goods or refused to examine the goods in order to be entitled to the defense of disclaimer of warranties.

We disagree and hold that Arkansas Code Annotated section 4-2-316(b) is only applicable when the defendants assert the exclusion or modification of an implied warranty due to the buyer's opportunity to examine the goods or a sample or model. *See* AMI Civ. 2514 note. Our reading of the provision itself as well as the notes on use of the jury instruction indicates that the conjunction "and" was used to demonstrate that there are multiple ways in which a disclaimer may be made. We hold that the "as is" clause in the bill of sale was sufficient to disclaim all implied warranties.

Madden also argues that her breach-of-warranty claim against the LRW defendants should have survived because the defective seatbelt amounted to a latent defect that could not be disclaimed. But, as she herself concedes, this contention depends on the same evidence she relied upon in sustaining her claim for products liability. As discussed more fully above, Madden failed to establish a triable dispute on the point that a seatbelt defect was present when she bought the vehicle.

Next, Madden argues that the circuit court mistakenly dismissed her express warranty claim. The bill of sale contains no express warranty other than the conveyance of good and marketable title. The only potential evidence that there was any other express warranty comes from Madden's testimony that Sandra David told her that the car was a good vehicle that drove well. The statements purportedly made by Sandra David are insufficient to create an express warranty because it is error to introduce oral testimony to vary the terms of a sales agreement. *See Green Chevrolet Co. v. Kemp*, 241 Ark. 62, 406 S.W.2d 142 (1966). Additionally, a necessary element for a breach-of-express-warranty claim is that the party asserting the breach relied on the warranty term in making the decision to buy the vehicle. Madden made no allegation that she relied on Sandra David's statements, and a failure to plead reliance on the warranty torpedoes an express-warranty claim. *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992). The circuit court's dismissal of the express-warranty claim is likewise affirmed.

Because we affirm the dismissal of all Madden's claims against the LRW defendants, we need not consider her final argument regarding whether Sandra David acted as Robert Vowell's agent when she sold the vehicle to Madden.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*David A. Hodges* and *Timothy F. Watson, Sr.*, for appellant.

*Quattlebaum, Grooms & Tull PLLC*, by: *Steven W. Quattlebaum*, *E. B. Chiles IV*, and *Amber Davis-Tanner*; *Barber Law Firm PLLC*, by: *G. Spence Fricke* and *A. Cale Block*, for appellees Mercedes–Benz U.S. International, Inc.; Mercedes–Benz USA, LLC; and TRW Vehicle Safety Systems, Inc.

*Huckaby Law Firm, PLC*, by: *D. Michael Huckaby, Jr.*, and *Kathryn B. Knisley*, for appellees Little Rock Wholesale, Robert Vowell, and Sandra David.

SLIP OPINION