Cite as 2019 Ark. App. 544

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-18-511

| | |
|---|---|
| CARROLL "DON" JOHNSON | **Opinion Delivered:** November 20, 2019 |
| APPELLANT | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CV-14-347] |
| V. | |
| POPE EMERGENCY GROUP, LLC | HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE |
| APPELLEE | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

In 2014, Pope Emergency Group (Pope) had an arrangement with St. Mary's Regional Medical Center in Russellville (St. Mary's) whereby Pope agreed to supply physicians to staff the hospital's emergency department. In February 2014, Pope entered into an agreement with the appellant, Dr. Carroll "Don" Johnson, to provide emergency room physician services as an independent contractor at St. Mary's. On June 30, 2014, Dr. Johnson's confrontation with a nurse led St. Mary's to request that Pope remove Dr. Johnson from the staff of the emergency department, whereupon Pope terminated its contract with Dr. Johnson.

Dr. Johnson filed a complaint in the Pope County Circuit Court alleging that Pope and its parent company, Schumacher Group of Arkansas (Schumacher), were liable for breach of contract and wrongful termination. Dr. Johnson also sued Russellville Holdings,

LLC, which owns and does business as St. Mary's Regional Medical Center.[1] Dr. Johnson alleged that the hospital tortiously interfered with his contract with Pope and Schumacher. Pope filed a counterclaim for breach of contract alleging that Dr. Johnson had failed to return a $30,000 signing bonus as required by the terms of their agreement.

Pope, Schumacher, and St. Mary's all filed motions for summary judgment, whereupon Dr. Johnson nonsuited all his claims against them.[2] Pope elected to continue pursuing its counterclaim, however, and the circuit court granted summary judgment in its favor in an order entered on February 2, 2017. Dr. Johnson now appeals the circuit court's order. We affirm.

## I. *Facts and Procedural History*

Dr. Johnson is a physician who specializes in emergency medicine. In late 2013, after years of working in Jonesboro, Dr. Johnson decided to return to St. Mary's, where he had previously worked as an emergency room physician from 2000 until 2008. The prospect of Dr. Johnson's return to St. Mary's was initially met with some hesitation by the administration of St. Mary's and officials at Pope and Schumacher because some patients

---

[1]All references to the party Russellville Holdings, LLC, will be according to its assumed business name, St. Mary's Regional Medical Center (St. Mary's).

[2]Dr. Johnson refiled his claims against Pope, Schumacher, and St. Mary's in a separate case, Pope County Circuit Court case number 58CV-16-358. The circuit court dismissed the claims with prejudice, however, after ruling that the summonses failed to strictly comply with Ark. R. Civ. P. 4(b). In a companion case that we also decide today, *see Johnson v. Schumacher*, 2019 Ark. App. 545, 589 S.W.3d 470, we affirm the circuit court's order dismissing the refiled complaint.

and hospital staff had complained that Dr. Johnson was "rude," "arrogant," and "condescending" during his previous tenure in the emergency department.

Nevertheless, on January 24, 2014, Dr. Johnson and Pope executed a "Physician Agreement" (Agreement) whereby Dr. Johnson agreed to provide physician services in the emergency department at St. Mary's. The Agreement became effective on February 17, 2014, and it had a one-year term that would automatically renew every year that Dr. Johnson "worked at least one (1) clinical shift." The Agreement also provided, however, that Pope could terminate the contract "immediately" and "without written notice" for a number of reasons, including when "Hospital Administration requests the removal of [Dr. Johnson] or reports that [he] is being disruptive, unprofessional, or unreasonably uncooperative with the medical or administrative staff of [the] Hospital." Additionally, Dr. Johnson would have to return a $30,000 signing bonus if he failed to meet any of the terms and conditions of the Agreement, including his obligation to "maintain membership in good standing on the Medical Staff of [St. Mary's] and abide by the bylaws, rules, and regulations of the Medical Staff[.]"

Dr. Johnson began working at St. Mary's on March 8, 2014. A couple of months later, Dr. McLane Simpson, the emergency room medical director for Pope and Schumacher, learned of two incidents in which Dr. Johnson and emergency room nurses had clashed over the use of nurse-initiated order sets, which authorized the nurses to order— in the attending physician's name—certain medical tests and medications according to a

patient's particular complaint.[3] The order sets had not been in use during Dr. Johnson's previous tenure at St. Mary's, and he believed that they allowed nurses to engage in the unauthorized practice of medicine. Dr. Johnson also opined that the order sets resulted in fraud because many of the tests that the nurses ordered—and the hospital billed to the patients—were unnecessary. After discussing the issue with Dr. Johnson and hearing his objections, Dr. Simpson ordered the nursing staff to avoid using the order sets during Dr. Johnson's shift in the emergency room.

On June 27, 2014, Jayme Smalley, the nurse manager in the emergency department, learned that one of Dr. Johnson's patients had a complaint about the care that he had been given. The patient was suffering from an infection, and a nurse, acting according to one of the order sets, had placed an IV. The patient told Ms. Smalley that he consequently believed that he would be admitted to the hospital and treated with IV antibiotics. Dr. Johnson, however, administered intramuscular injections of antibiotics and discharged the patient. According to Ms. Smalley, the patient and his family "simply wanted an explanation," and if the patient ultimately was not going to be admitted into the hospital, they wanted to "talk to the physician one more time to find out why." Ms. Smalley responded that she would ask Dr. Johnson to speak to the family and explain his decision.

Ms. Smalley approached Dr. Johnson while he sat in a physicians' work area at the nurses' station. She explained the concerns of the patient and his family and requested that

---

[3]To further explain, the order sets are also known as "complaint driven order sets." One set of orders, for example, was formulated to address a male patient who is over thirty-five and presents to the emergency room with chest pain. Following the preapproved order set for such a patient, a nurse may order, among other things, a cardiac panel, an EKG, and a chest x-ray.

Dr. Johnson return to the patient's room to explain his decision to give an intramuscular injection and discharge him. According to Ms. Smalley, Dr. Johnson believed that Ms. Smalley was questioning his medical judgment, and he refused to go explain himself to the patient. A loud and heated argument ensued. Ms. Smalley testified in a deposition that at one point in the altercation, Dr. Johnson got "uncomfortably close to [her]," and "pointed his finger at [her] towards [her] sternum." Ms. Smalley further testified that a witness to the argument became visibly uncomfortable and that she herself felt "a little intimidated."

Ms. Smalley immediately reported the incident to Dr. Simpson and the administration of St. Mary's, eventually telling Mike McCoy, the hospital's chief operating officer, "what [had] happened, that the patient actually . . . went home, and Dr. Johnson never went back into the room to talk to the patient or family." Mr. McCoy thereafter decided that the incident with Ms. Smalley, as well as Dr. Johnson's reputation from his previous tenure at St. Mary's, warranted contacting Pope and Schumacher to request that they stop scheduling shifts for Dr. Johnson in the emergency department.

Consequently, on June 30, 2014, Mr. McCoy sent an email to Dr. Simpson stating that the hospital administration "[did] not want Dr. Johnson working in [its] ER" because "[t]he behavior that he displayed [with Ms. Smalley] was unacceptable." Dr. Simpson forwarded Mr. McCoy's email to Schumacher's general counsel, Ryan Domengeaux, who determined that Mr. McCoy's request warranted immediate termination of Dr. Johnson's contract.

On November 12, 2014, Dr. Johnson filed a complaint against Schumacher, Pope, and St. Mary's in the Circuit Court of Pope County. The complaint described the use of

5

nurse-initiated order sets in the emergency department at St. Mary's and alleged that Dr. Johnson "believed this practice was illegal, unethical, and fraudulent; and was placing him in a position of condoning malpractice." The complaint further alleged that nurses continued using the order sets during his shift in the emergency department even after Dr. Simpson "told the nurses verbally that Dr. Johnson does not want nurses ordering in his name." Dr. Johnson also alleged that his view of nurse-initiated order sets "became a constant point of contention" with the nurses and that he "was told that he was disruptive/disrespectful of the nurses." He asserted that this negative atmosphere culminated in a "hostile confrontation" with Ms. Smalley that "was about an admission of a patient to the hospital and Dr. Johnson 'not getting with the program.'" Dr. Johnson finally alleged that he was terminated shortly after the incident with Ms. Smalley even though he had contacted Dr. Simpson to resolve the issue and was "wholeheartedly in favor of repairing nursing relationships and resolving his concerns."

Based on those alleged facts, Dr. Johnson claimed that Pope and Schumacher breached the Agreement "by terminating the contract based on [his] refusal to violate the law" or, alternatively, that Pope and Schumacher wrongfully terminated him "because of [his] refusal to violate the public policy of the State of Arkansas" as codified at Arkansas Code Annotated sections 17-95-202(3)(A)–(B) and 17-95-401 (Repl. 2018).[4] Dr. Johnson

---

[4]Arkansas Code Annotated section 17-95-202(3)(A)–(B) defines "office-based surgery" as "surgery that is performed by a physician in a medical office . . . that requires the use of general or intravenous anesthetics[.]" Section 17-95-401 generally provides that any person who practices medicine must have a valid license to do so.

further claimed that St. Mary's tortiously interfered with his contractual relationship with Pope and Schumacher based on his "refusal to violate the law."

Pope filed a counterclaim against Dr. Johnson alleging that it had paid him a $30,000 signing bonus pursuant to the terms of the Agreement. Pope also alleged that the Agreement "provided that the entire signing bonus sum of $30,000 paid to [Dr. Johnson] shall be forfeited and returned to Pope Emergency Group within thirty (30) days of his last shift worked, if the terms and conditions of the [Agreement] are not complied with at any time during the commitment term." According to Pope, Dr. Johnson stopped providing services at St. Mary's on July 1, 2014, and "all of his physician hospital privileges were revoked." As a result, "[Dr. Johnson] was in breach of contract and was required to return the signing bonus." He did not; and Pope alleged unjust enrichment and conversion based on Dr. Johnson's failure to return the signing bonus as he had agreed.

Pope, Schumacher, and St. Mary's filed motions for summary judgment, whereupon Dr. Johnson voluntarily nonsuited his claims. Pope nonetheless elected to proceed with its counterclaim against Dr. Johnson, alleging that it was entitled to summary judgment because the undisputed facts demonstrated that "Dr. Johnson breached the Agreement by failing to return the $30,000 signing bonus within 30 days." The circuit court agreed and granted summary judgment on the counterclaim in an order entered on February 2, 2017.

Dr. Johnson now makes two arguments for reversal. First, while Dr. Johnson acknowledges that he did not return the $30,000 signing bonus, he argues that he produced "substantial evidence" that Pope was the first to breach the Agreement by wrongfully terminating him in violation of public policy. According to Dr. Johnson, Pope terminated

7

his contract because he objected to St. Mary's use of nurse-initiated order sets in a manner that violated public policy against the unlicensed practice of medicine. Second, Dr. Johnson argues that the circuit court erred by granting the motion for summary judgment because Pope failed to show the absence of a genuine issue of material fact regarding his affirmative defense of fraud in the inducement.

## II. *Standard of Review*

We determine if summary judgment was appropriate after considering "whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered." *E.g.*, *Madden v. Mercedes-Benz USA, Inc.*, 2016 Ark. App. 45, at 4, 481 S.W.3d 455, 458. "Once the moving party has established prima facie entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact." *Id.* "The court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party." *Id.* "A court may grant summary judgment," moreover, only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law." *Id.*

## III. *Discussion*

### A. Wrongful Termination

Dr. Johnson first argues that the circuit court erred by granting summary judgment because he demonstrated genuine issues of material fact in his defense that Pope wrongfully discharged him in violation of public policy. While Dr. Johnson concedes that cognizable

8

wrongful-discharge claims have been limited to at-will employees, he argues that "there is no reason" that the doctrine should not be extended to independent contractors like himself. He further contends that he put forth evidence that created genuine issues of material fact regarding whether St. Mary's use of nurse-initiated order sets violated an established public policy in Arkansas.

Pope responds that the circuit court correctly ruled, as a matter of law, that Dr. Johnson cannot claim that he was wrongfully discharged. Pope asserts that wrongful-discharge claims have been limited to at-will employees in Arkansas, and it is undisputed that Dr. Johnson was "not an at-will employee, or even an employee of any sort[.]" Pope also asserts that even if this court were to extend wrongful-discharge claims to independent contractors like Dr. Johnson, he failed to establish that St. Mary's use of nurse-initiated order sets violated a well-established public policy. Finally, Pope asserts that in any event, Dr. Johnson failed to demonstrate that he was terminated because of his objections to the nurse-initiated order sets.

"This court has repeatedly held that when an employee's contract of employment is for an indefinite term, either party may terminate the relationship without cause or at will." *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 9, 403 S.W.3d 559, 563. An at-will employee may have a cause of action for wrongful discharge, however, if he or she is fired in violation of a well-established public policy of the state. *See Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 248–49, 743 S.W.2d 380, 385 (1988). This public-policy exception "sounds in contract" because "a public policy discharge action is essentially predicated on the breach

9

of an implied provision that an employer will not discharge an employee for an act done in the public interest." *Id.* at 249, 743 S.W.2d at 385.

Nevertheless, as Dr. Johnson admitted in his deposition below and appears to concede in his brief here, he is not an at-will employee. Indeed, the Agreement is very clear about the nature of his relationship with Pope, providing that it "shall be that of an independent contractor" in which Pope "shall not exercise any control or direction over the methods by which [Dr. Johnson] shall perform [his] professional work and duties while on duty." The Agreement further provides that it "shall not be construed as an agreement of employment," and correspondingly, Pope had "no responsibility for withholding any sums for payroll taxes, FICA, or any other such employee related benefits or statutory requirements." Rather, Dr. Johnson agreed that as an independent contractor, it was his "sole responsibility to provide for tax liabilities or other statutory obligations," including "his own worker's compensation insurance [and] disability insurance." Accordingly, Dr. Johnson cannot avail himself of a wrongful-termination claim that to date has been reserved for at-will employees.

We need not decide, moreover, whether claims of wrongful termination based on violations of public policy should be extended to independent contractors like Dr. Johnson. This court will not consider an argument when it is not apparent without further research that the argument is well taken, *Beth's Bail Bonds, Inc. v. State*, 2016 Ark. App. 171, at 3, 486 S.W.3d 240, 241, and Dr. Johnson does not make a sufficient argument on this complex

10

issue of first impression.[5] Dr. Johnson's principal brief asserts only that "there is no reason" that the doctrine should be limited to at-will employees, and his reply brief does little more, simply asserting that the contract rationale for the exception recognized for at-will employees in *Sterling Drug* should extend to all contracts. Moreover, he makes the argument for the first time on appeal. Therefore, because we have "long held that we will not consider an argument when the appellant presents no applicable authority or convincing argument in its support," *Steele v. Lyon*, 2015 Ark. App. 251, at 5, 460 S.W.3d 827, 832, or any argument when it is raised for the first time on appeal, *see Pleasant v. State ex rel. McDaniel*, 2019 Ark. App. 248, at 6, 576 S.W.3d 90, 94, we decline Dr. Johnson's apparent invitation to extend *Sterling Drug* to independent contractors.

Even so, Dr. Johnson has not established that St. Mary's use of nurse-initiated order sets violates public policy. To succeed on a claim of wrongful termination, Dr. Johnson would have to demonstrate that he was terminated in violation of an established public policy, which is generally found in the state's constitution and statutes. *Sterling Drug*, 294 Ark. at 249–50, 743 S.W.2d at 385. Dr. Johnson does not point to any statute that

---

[5]Indeed, the supreme court engaged in a detailed survey of out-of-state cases when it decided whether to recognize the public policy exception for at-will employees in *Sterling Drug*, 294 Ark. at 248–49, 743 S.W.2d at 385, and courts that have addressed whether independent contractors can claim wrongful termination in violation of public policy have considered a wide spectrum of issues, including the terms of the underlying contract. *See Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho*, 851 P.2d 946, 949–50 (Idaho 1992) (refusing to extend the doctrine because the implied covenant of good faith and fair dealing did not apply to independent contractors); *Abrahamson v. NME Hosps*, 195 Cal. App. 3d 1325, 1330 (Cal. Ct. App. 1987) (independent contractor whose contract allowed "termination without cause" did not have a claim for wrongful termination). *Cf. Ackerman v. State*, 913 N.W.2d 610, 614–22 (Iowa 2018) (analyzing the development of the common-law claim to determine that it should be extended to contract employees).

addresses—or expressly prohibits—the use of nurse-initiated order sets. He also cannot extrapolate such a policy from Arkansas Code Annotated section 17-95-401, which generally prohibits "any person" from practicing medicine without a license. *See Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 472, 40 S.W.3d 784, 790–91 (2001) (rejecting argument that Fiscal Responsibility Act and general state accounting laws established a public policy against combining public and private funds in a single account).

Finally, Dr. Johnson has failed to demonstrate that Pope terminated the Agreement in retaliation for his objections to nurse-initiated order sets. The evidence below conclusively demonstrated that Pope terminated the Agreement simply because St. Mary's, after investigating Dr. Johnson's conduct with Ms. Smalley, requested Dr. Johnson's removal from the emergency department's schedule.

In addition, there is no evidence that Dr. Johnson's objections to nurse-initiated order sets played any role in St. Mary's request. Indeed, Dr. Johnson testified that he never communicated his objections to anyone in the administration at St. Mary's. Mr. McCoy also testified that "[i]t would not be St. Mary's policy or procedure to discipline or remove a physician who was unwilling to use the nurse-initiated order sets."

Rather, Dr. Johnson's history of unacceptable conduct toward the staff and patients at St. Mary's was the reason that officials at the hospital no longer wanted him in the emergency department. Mr. McCoy explained that Donnie Frederick, the hospital's chief executive officer, directed him to investigate the incident with Ms. Smalley and instructed him that "if [Dr. Johnson's] behavior was inappropriate like it had been in the past when he was [at St. Mary's], that we didn't need him working in our ER." Also, as indicated above,

Mr. McCoy testified that he determined that Dr. Johnson "was no longer going to be working at St. Mary's" as a result of the incident with Ms. Smalley and his conduct during his previous tenure at the hospital. Mr. McCoy further explained that "whether or not Dr. Johnson was right or wrong with respect to patient care," he "did not act appropriately by not going back and being an advocate for that patient and discussing the situation and why he treated [the patient] the way he did." Therefore, because the evidence demonstrates that Pope terminated the agreement simply because St. Mary's requested his removal, and that request was precipitated by Dr. Johnson's unacceptable conduct—and not his objections to nurse-initiated order sets—we affirm the circuit court's order.

## B. Fraud in the Inducement

Dr. Johnson asserted several affirmative defenses in his answer to Pope's counterclaim, including fraud. At the hearing on Pope's motion for summary judgment, Dr. Johnson argued that there remained a genuine issue of material fact regarding whether he was fraudulently induced to execute the Agreement by its express term providing that Pope "shall not exercise any control or direction over the methods by which [Dr. Johnson] shall perform [his] professional work and duties while on duty." According to Dr. Johnson, Pope's agreement that he could engage in "the unfettered practice of medicine at [the] hospital," was fraudulent because Pope knew that St. Mary's allowed nurses to use the order sets to intervene in patient care.

The circuit court rejected Dr. Johnson's argument, ruling that he did not state a cognizable claim of fraud in the inducement because he "based [his] argument . . . on language in the Agreement itself" rather than "on a statement made prior to the execution

13

of the Agreement." The circuit court also ruled that "Dr. Johnson has not submitted any proof demonstrating that he was forced to practice differently from his preferences," and in fact, the proof showed that "when [Dr. Johnson] complained about the nurse-initiated order sets, the nursing staff was told not to use them when Dr. Johnson was on duty." On appeal, Dr. Johnson apparently asserts that the circuit court erred when it rejected this claim without requiring Pope to come forward with evidence and argument negating his fraud claim.

We must affirm because Dr. Johnson failed to assign any error to the actual basis of the circuit court's ruling—that he failed to state a cognizable fraud claim. It is well settled that we will not address the merits of an argument when other grounds supporting the circuit court's order go unchallenged, *see Quarles v. Courtyard Gardens Health and Rehab., LLC*, 2016 Ark. 112, at 9, 488 S.W.3d 513, 520, and Dr. Johnson does not assign any error to the circuit court's ruling that he failed to state a cognizable fraudulent-inducement claim.

In any event, the record below does not demonstrate that Dr. Johnson was forced to use the nurse-initiated order sets, as he apparently claims. Dr. Simpson and Dr. Johnson both testified, after all, that Dr. Simpson instructed the nurses to avoid using nurse-initiated order sets while Dr. Johnson was on duty. Mr. McCoy also testified that any physician who does not want to use the order sets "could choose not to use them, as long as they reported [the reason] to the medical director." The circuit court's order, therefore, is affirmed.

## IV. *Conclusion*

Dr. Johnson failed to demonstrate that Pope first breached the Agreement by terminating him in retaliation for his objections to St. Mary's use of nurse-initiated order sets. As an independent contractor, Dr. Johnson cannot advance a wrongful-termination

14

claim that has been recognized only for at-will employees, and in any event, he failed to establish that St. Mary's use of the nurse-initiated order sets violated a clearly established public policy. The evidence below also demonstrated that Pope actually terminated the Agreement because St. Mary's requested Dr. Johnson's removal from the emergency department—not because of his earlier objections to the nurse-initiated order sets. Finally, we reject Dr. Johnson's argument that the circuit court erred by dismissing his defense of fraud in the inducement because he does not challenge the actual basis for the circuit court's ruling. The order granting summary judgment on Pope's counterclaim, therefore, is affirmed.

Affirmed.

GLADWIN and KLAPPENBACH, JJ., agree.

*Sutter & Gillham, P.L.L.C.*, by: *Luther Oneal Sutter*; and *Baker & Schulze*, by: *J.G. "Gerry" Schulze*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Regina A. Young* and *Gary D. Marts, Jr.*, for appellee.

15