Cite as 2021 Ark. App. 332

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-19-346

| | |
|---|---|
| | **Opinion Delivered** September 15, 2021 |
| ILESHIA GARNER AND DEZMON GORDON | |
| | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT |
| APPELLANTS | [NO. 54CV-14-285] |
| V. | |
| | HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE |
| THE GOODYEAR TIRE AND RUBBER COMPANY | |
| | AFFIRMED; MOTION TO DISMISS |
| APPELLEE | GRANTED |

## N. MARK KLAPPENBACH, Judge

The Goodyear Tire and Rubber Company (Goodyear) manufactured one of the tires mounted on the car that appellant Dezmon Gordon (Gordon) was driving on May 10, 2012. Appellant Ileshia Garner (Garner) was riding as a passenger in the car when the tread separated from the Goodyear tire, causing Gordon to lose control. The vehicle left the roadway, hit an embankment, and rolled over.

Garner and Gordon filed separate complaints alleging that Goodyear was liable for their injuries on theories of negligence, strict liability, and breach of warranty. The circuit court granted Goodyear's motion for summary judgment, and Garner and Gordon filed separate notices of appeal from the circuit court's order.

On appeal, Garner has filed a brief asserting that the circuit court erred by granting Goodyear's motion for summary judgment because genuine issues of material fact remain as to whether alleged design defects in the subject tire proximately caused her injuries. Gordon

has not filed a brief or taken other steps to secure our review of the circuit court's order, prompting Goodyear to file a motion to dismiss his appeal. We grant the motion to dismiss Gordon's appeal and affirm the circuit court's order granting summary judgment.

## I. *Factual Background*

Gordon was driving a friend's 2000 Crown Victoria on May 10, 2012. The owner of the car, Jeremy Glass, bought the subject tire, a Goodyear Eagle GA model, two weeks beforehand.[1] The accident occurred at approximately 10:20 p.m., when, according to the police report, Gordon suddenly steered the car to avoid hitting a deer that crossed the road. The left rear tire "blew" during the evasive maneuver, and Gordon lost control of the car. The Crown Victoria left the road, hit an embankment, flew into the air, struck a utility pole, and landed upside down. Gordon and Garner both sustained injuries in the accident.

On December 1, 2014, Garner filed a complaint against both Goodyear and Gordon, alleging that she suffered "serious injuries" as a "direct result of the [Goodyear] tire tread separation and [Gordon's] actions." In particular, she alleged that the tread of the tire "separated, detached, and suddenly flew off the tire," causing Gordon to lose control. Garner further alleged that the subject tire was manufactured in 1991, which "should have been disclosed to the buyer of the tire and the occupant of the vehicle and the driver of the vehicle at the time of [the] incident." "The tire was too old," she said, and "Goodyear should have advised the public to look at the age of the tire and not just the tread depth."

---

[1] The advanced age and poor condition of the tire (as described later in this opinion) strongly suggests it was a secondhand purchase.

Consequently, Garner alleged negligence, strict-liability, and breach-of-warranty claims against Goodyear. According to Garner, Goodyear was liable under these theories because it failed to properly test and inspect the tire; because the inner liner of the tire had various defects; and because the tire did not include a nylon overlay and other safety features that were available when it was manufactured. Garner also claimed that Goodyear failed to discover, repair, and warn the consumer of these defects "before the sale of the subject tire." As to Gordon, Garner claimed that he was negligent for failing to maintain control of the vehicle; failing to keep a proper lookout; and failing "to inspect the tires before the incident." Both Goodyear and Gordon filed answers denying liability.

On March 31, 2015, Gordon filed a cross-claim against Goodyear. The factual allegations of the cross-claim were identical to Garner's complaint in all material respects, and like Garner, Gordon alleged that Goodyear was liable under negligence, strict-liability, and breach-of-warranty theories. On April 26, 2017, Goodyear followed with its own cross-claim against Gordon for contribution under Ark. Code Ann. §§ 16-61-201 to -209 (Repl. 2005 & Supp. 2021). It also filed an answer denying the allegations in Gordon's cross-claim on April 26.

Garner retained Dennis Carlson, a mechanical engineer and tire consultant, to inspect the subject tire and render an opinion about whether a defect in the tire caused the accident. Carlson issued a report in which he found that Goodyear had manufactured the subject tire "during the 20th week of 1991," and the "failure mode was a separation between [steel] belts 1 and 2, resulting in a complete detachment of the tread and the outer belt." Carlson's inspection also revealed that there were two "plug-only repairs" in the "repairable zone" of

3

the tire. One of the plugs successfully sealed the puncture site. The other apparently did not seal the puncture site because a "small hole through the liner" remained "directly adjacent" to the repair. Carlson also observed that while there were "no tread grooves available to measure tread depth," visible "wear on the shoulders suggests that the tire was nearly worn out."

On the basis of these observations, Carlson opined that the subject tire was "defective in design for lack of aging resistance." He explained that he found "bare wire" as a "result of a breakdown in adhesion of the rubber to metal bonds due to aging which was the cause of the failure." Carlson further opined that the tire was defective in design because it "lack[ed] a nylon overlay which would have prevented or delayed the failure." Carlson also observed that "Goodyear has no recommendation to remove tires due to chronological age," and "[e]very major tire manufacturer except Goodyear has warned against using tires that are 10 or more years of age." Finally, Carlson ruled out other potential causes of the tire's failure, observing that it did not "exhibit any damage due to over deflected operation or pre-accident impact."

Carlson elaborated on his opinions in an oral deposition that he gave on August 20, 2018. In his deposition, Carlson acknowledged that his inspection of the subject tire had occurred over twenty-one years after it was manufactured; that the rubber was brittle and deteriorating; and that the tire "was just completely rotten on the inside." He also testified, however, that the tire was defective because the "carcass of the tire did not last as long as the tread," and three defects adversely affected the "aging resistance" of the subject tire.

4

First, Carlson said that he observed square marks on the inner liner.[2] The marks were imprinted by a bladder that Goodyear used to inflate the tire during the curing process. Carlson testified that he believed "that [those] imprints have an adverse effect on the aging of the tire" because it reduces the [thickness of] the inner liner by half" in those areas. He explained that "the thickness of the inner liner is directly related to the endurance strength of the tire," and there was "research suggesting that [the] square marks . . . decrease the gauge of the inner liner to a point that it has a negative effect on the aging resistance of the tire." Carlson also indicated that he had seen the square marks in other tires that had "premature aging failures," and "the link between the thickness of the inner liner and aging failure is well-established."

Carlson also conceded, however, that he did not have empirical or extrinsic evidence of the relationship between the square marks and the thickness of the inner liner. He also did not measure the thickness of the inner liner of the subject tire; consequently, he had "no evidence that the inner liner of the subject tire was insufficient." Carlson testified, in fact, that "the inner liner on [the subject] tire was probably safe and reasonable for six years, but not for [twenty-one]."

Second, Carlson also testified that the subject tire was defectively designed because it failed to include a warning that advised users "in plain English" to take the tire out of service six years from the date of its manufacture. He admitted, however, that there "was not a tire available . . . in 1991 that included a recommendation from the tire manufacturer

---

[2]According to Goodyear, "the inner liner substitutes for the tube in the tire's interior and consists of a rubber layer with low air permeability."

5

to replace [a tire] after a certain period of time." Car companies, moreover, did not warn about the service life of the tires on the cars they sold. Carlson also conceded that he did not know whether a service-life warning would have produced a different outcome in this case, and in an apparent retraction, he declared that "it was not [his] opinion that the subject tire is defective and unreasonably dangerous because it did not have an on-product warning."

Third, Carlson testified that the subject tire was defectively designed because it did not include a nylon overlay, also known as a nylon cap ply.[3] According to Carlson, "[a] nylon overlay improves the endurance strength of the tire" and can "greatly reduce" the likelihood of a tread separation. He further testified that he could "say with engineering certainty" that a nylon overlay would have prevented the tread-belt detachment in this case. Carlson stated that "[i]n 1991, when the tire was manufactured, it had a design defect because it lacked a nylon overlay." He declared that Goodyear had "nylon available for at least ten years at that time, and they could have put it on this design, and it would have made it a stronger tire that was more resistant to aging." Carlson also testified that while he did not have "any evidence to support [his] opinions that the lack of a nylon overlay led to the mechanism of failure in this case," he insisted that "the nylon ply would [have] significantly increase[ed] the fatigue strength of the tire and . . . prevented [its] failure[.]"

Garner amended her complaint on April 27, 2018. The amended complaint reasserted that Goodyear was negligent for failing to warn of the defects in the tire at the

---

[3]As Goodyear explains in its brief, a nylon cap ply "consists of layers of nylon that extend circumferentially around the steel belts of the tire."

6

time it was manufactured, sold, and distributed. It also added a claim that Goodyear was negligent because of its "post-manufacturing failure to warn." Garner averred that the company "knew, or should have known, of the defect in [the] tire, and failed to warn people that purchased the tire from as early as 1991 through the time of the incident." The failure to warn was evidence of Goodyear's negligence, Garner said, and it was the proximate cause of her injuries. Gordon filed an identical amendment to his cross-claim on July 3, 2018. Goodyear filed answers to the amended claims on May 7 and July 17, 2018, respectively.

On May 18, Goodyear moved for summary judgment, arguing that it was entitled to judgment as a matter of law on all of Garner's and Gordon's claims. The motion alleged that Carlson's testimony did not support their claim that the tire was defective. In particular, Goodyear argued that Carlson conceded that the three identified defects "did not make the tire defective at the time it left Goodyear's control and admitted he lacked the necessary evidentiary support to show these conditions were a causative factor in [Garner's] and Gordon's injuries." Goodyear asserted that "[c]ourts around the country have repeatedly excluded Carlson's nylon cap ply theory for lack of evidentiary support, and no tire of the same size or speed rating built in 1991 included a nylon cap ply." As for Carlson's theory based on the square marks on the inner liner, Goodyear contended that Carlson "conceded the square marks 'won't make that much of a difference' if the inner liner is sufficiently thick, but made no effort or attempt to measure the inner liner."

Goodyear further asserted that Carlson's deposition established that "[n]o tire in the world has ever used an on-product warning for tire service life, and no manufacturer in 1991 recommended replacement of tires after a certain period of time." Goodyear also

argued that the circuit court should reject Garner's post-sale failure-to-warn claim (alleged in the amendment to the complaint) because Arkansas does not recognize such a claim. Also, according to Goodyear, any warning would have been futile because Garner and Gordon both admitted in their depositions that they never read the vehicle's owner's manual, the tire placard on the vehicle, "or any of the writings on the subject tire."

Garner and Gordon filed identical responses to Goodyear's motion. They insisted that Carlson's opinion that the tire was defective created genuine issues of material fact on their claims of negligence, strict liability, and breach of warranty.

Garner further asserted that Goodyear's motion for summary judgment put undue emphasis on the age of the tire as a factor in the accident. To that end, she attached the depositions of two Goodyear employees, Michael Kerns and Kevin Legge. Mr. Kerns testified that a broad range of variables—and not just age—contribute to the life expectancy of a tire. Mr. Legge testified that the life expectancy of a tire that is "properly used and stored" can be "many decades."

The circuit court heard arguments on the motion for summary judgment on August 23, 2018. The court announced its intention to grant the motion in remarks from the bench at the conclusion of the hearing, and on September 25, the court entered a written order granting summary judgment and dismissing with prejudice all of Garner's and Gordon's claims against Goodyear. Garner and Gordon both filed notices of appeal from the order granting summary judgment.

Garner's negligence claim against Gordon and Goodyear's cross-claim against Gordon remained outstanding after the circuit court granted the motion for summary

judgment. On December 17, 2018, the circuit court entered a written order that dismissed without prejudice Goodyear's cross-claim for contribution. In the same order, the court executed a Rule 54(b) certificate and directed that "the judgment should be a final judgment for all purposes." Garner filed a supplemental notice of appeal on January 7, 2019, that designated additional items for inclusion in the appellate record, including the final order entered on December 17, 2018. Gordon did not file any additional notice of appeal.

On November 19, 2019, Goodyear filed a motion to dismiss Gordon's appeal from the order granting summary judgment because Gordon failed to file a brief or take any further steps to secure appellate review after filing his notice of appeal. On December 11, 2019, we passed the motion until the case was submitted.

III. *Discussion*

A. Motion to Dismiss

Citing Ark. R. App. P.–Civ. 3(b), Goodyear contends that Gordon has not taken any further steps to secure appellate review after filing his notice of appeal. Rule 3(b) grants this court the discretion to dismiss the appeal in those circumstances, and Goodyear requests that we exercise that discretion here.

We dismiss Gordon's appeal for the more fundamental reason that Gordon failed to file any notice of appeal from the *final* order entered on December 17, 2018. An order must be final and appealable for an appellate court to acquire jurisdiction. *See Price v. Carver*, 2017 Ark. App. 75, at 2, 513 S.W.3d 877, 879. An order is final if it dismisses the parties, discharges them from the action, or concludes their rights to the subject matter in

9

controversy. *Id*. An order generally is *not* final, therefore, when it adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties. *Id*.

Nonetheless, entry of a final judgment on fewer than all claims is allowed under Ark. R. Civ. P. 54(b), which permits circuit courts to

> direct the entry of a final judgment as to one or more but fewer than all of the claims or parties . . . upon an express determination, supported by specific factual findings, that there is no just reason for delay and upon an express direction for the entry of judgment.

The rule further provides that in the event the circuit court finds that entry of a final judgment is warranted, it shall execute a certificate "which shall set forth the factual findings upon which the determination to enter the judgment as final is based[.]" *Id*. Moreover, "the inclusion of a Rule 54(b) certificate renders the included claims final and appealable," which for our purposes here, "means that an appellant must timely appeal the order once it is entered or risk forfeiting the right to appeal what the order decided." *Pockrus v. Morris*, 2020 Ark. App. 364, at 5, 608 S.W.3d 159, 161.

The circuit court's September 25, 2018, order was not a final order because Garner's negligence claim against Gordon, as well as Goodyear's cross-claim against Gordon, remained outstanding. Gordon's notice of appeal filed October 29, 2018—even if it was somehow timely—therefore had no effect.[4] The circuit court actually did not enter a final order and Rule 54(b) certificate until December 17, 2018, and according to the record,

---

[4]Goodyear's motion to dismiss indicates that Gordon timely filed the notice of appeal "on or about October 25, 2018." The notice in the record, however, was marked as filed on October 29, 2018. Accordingly, the notice was not timely filed, in any event, within thirty days of the order granting summary judgment as required by Ark. R. App. P.–Civ. 4(a).

Gordon did not file any notice of appeal—as he must—from that order. Consequently, even if Gordon had filed a brief or taken any other steps to pursue his appeal, we must dismiss it for lack of jurisdiction.

## B. Summary Judgment

Garner argues that the circuit court erred by granting summary judgment because genuine issues of material fact remain as to whether the subject tire was defective and whether the alleged defects proximately caused the accident. She asserts that Carlson's deposition testimony and report indicate that the tire was defective because it lacked a nylon overlay; because it failed to include a service-life warning; and because there were square marks on the inner liner that, in Carlson's experience, correlated to a reduction in the aging resistance of the tire. Garner further asserts that her post-manufacture duty-to-warn claim "is viable under Arkansas law," and a factual question remains as to whether Goodyear can rebut the presumption that Garner and Gordon "would have read and heeded adequate warnings and or instructions." Consequently, she asserts that her strict-liability, breach-of-warranty, and negligence claims should be tried to a jury.

Goodyear responds that Carlson's testimony failed to establish that the twenty-one-year-old tire was defective or that any of the alleged defects caused the accident. First, regarding the lack of a nylon overlay, Goodyear points to several instances in Carlson's deposition when he could not definitively say that the absence of a nylon overlay was a design defect. Goodyear further argues that Carlson's deposition testimony does not indicate that the absence of a nylon overlay, even assuming it was a design defect, caused the accident.

11

Second, Goodyear contends that Carlson's testimony did not establish that the subject tire was defective because it had square marks on its inner liner. According to Goodyear, Carlson failed to support his theory that the square marks reduced the aging resistance of the tire because he admittedly failed to measure the inner liner of the subject tire to determine if it had been reduced in the areas where the square marks appeared.

Third, Goodyear argues that there is no basis for Carlson's opinion that the subject tire was defective because it did not have an on-product warning to remove it from service after six years. Among other things, Goodyear also points out that Carlson "ultimately admitted the subject tire is not defective and unreasonably dangerous because it did not have an on-product warning," and Carlson did not know, in any event, if such a warning would have prevented the accident in this case. Goodyear further contends that Arkansas does not recognize Garner's post-sale duty-to-warn claim, and even so, Garner and Gordon's testimony establishes that neither would have read any available post-sale warning. Because we agree that Carlson's report and testimony fail to establish that any of the alleged defects proximately caused Garner's injuries, and the other exhibits that Garner submitted in response to Goodyear's motion also fall short of creating a genuine issue of material fact on that question, we affirm the order granting summary judgment.

"Summary judgment is one of the tools in a [circuit] court's efficiency arsenal" *Ginsburg v. Ginsburg*, 353 Ark. 816, 820, 120 S.W.3d 567, 570 (2003), and its purpose "is to avoid the waste of time, work, and money involved in requiring the trial of a case when a party cannot produce evidence supporting the existence of a fact necessary to establish his claim or defense." *Hamilton v. Allen*, 100 Ark. App. 240, 244 n.1, 267 S.W.3d 627, 628

12

n.1 (2007). Therefore, "once the moving party has established prima facie entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact." *E.g.*, *Madden v. Mercedes-Benz USA, Inc.*, 2016 Ark. App. 45, at 4, 481 S.W.3d 455, 458. "The court views the evidence in the light most favorable to the party against whom the motion was filed," however, and it must "[resolve] all doubts and inferences against the moving party." *Id.* Additionally, a court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated and that the party is entitled to judgment as a matter of law." *Id.* On review, this court "determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered." *Id.*

Proof that a design defect in the tire proximately caused Garner's injury is a prerequisite to recovery on all of her claims alleging strict liability, breach of warranty, and negligence. Under Arkansas law, a supplier of a product is strictly liable for damages if

> (1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product; (2) The product is supplied by him or her in a defective condition that rendered it unreasonably dangerous; and (3) The defective condition was a proximate cause of the harm to a person or to property.

Ark. Code Ann. § 16-116-101(a) (Repl. 2016). Similarly, to recover for a breach of an implied warranty of merchantability, Garner must prove that (1) she has sustained damages; (2) the tire was not fit for the ordinary purpose for which tires are used; (3) the unfitness of the tire was a proximate cause of the damages; and (4) she was a person whom Goodyear might reasonably expect to use or be affected by the product. *F.L. Davis Builders Supply, Inc. v. Knapp*, 42 Ark. App. 52, 57–58, 853 S.W.2d 288, 290 (1993). Finally, to prevail on

13

her claim of negligence, Garner must prove that Goodyear owed her a duty, that Goodyear breached that duty, and that the breach was the proximate cause of her injuries. *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, at 16, 386 S.W.3d 439, 449.

"Proximate cause is defined as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Miaoulis v. Toyota Motor N. Am., Inc.*, 2021 Ark. App. 19, at 5. "Causation cannot be based on mere conjecture and speculation," *Bank of the Ozarks, Inc. v. Ford Motor Co.*, 2020 Ark. App. 231, at 10, 599 S.W.3d 718, 724, and to establish proximate cause, Garner must introduce evidence "from which reasonable persons might conclude that it is more probable than not" that her injury was caused by a defect in the subject tire. *Id.* at 11, 599 S.W.3d at 724. Ordinarily a jury question, proximate cause becomes a question of law when reasonable minds cannot differ. *Barnett v. Cleghorn*, 2017 Ark. App. 641, at 5, 536 S.W.3d 147, 151.

Carlson's report and deposition establish that the condition of the subject tire had changed substantially since Goodyear manufactured it in 1991. For starters, the tire's age—twenty-one years from the date of manufacture—was considerably longer than the six-year service life that Carlson recommended. Carlson's report stated that there were no longer any "tread grooves available to measure tread depth" and that "wear on the shoulders suggests the tire was nearly worn out." Additionally, as recounted above, Carlson also observed that there were two "plug only" repairs in the tire, and there was "a small hole through to the inner liner" next to one of them. He also noted that due to aging, the rubber

14

on the tire was "deteriorating" and "brittle," and it "was just completely rotten on the inside."

There is no genuine issue of material fact, moreover, as to whether any of the alleged design defects was a more probable cause of its failure than its advanced age and worn condition. Arkansas does not recognize any post-sale duty to warn, *see Campbell v. Devol, Inc.*, 620 F.3d 887, 894 (8th Cir. 2010) (observing that Arkansas has not adopted post-sale theory of liability), and even so, Carlson admitted that he did not know if any service-life recommendation would have "resulted in a different outcome in this incident." Garner's and Gordon's depositions also established that a warning would have been futile in any event, as both admitted that they did not read the vehicle's owner's manual, the tire placard mounted on vehicle, or any of the writing on the sidewall of the tire. *See Bushong v. Garman Co.*, 311 Ark. 228, 234, 843 S.W.2d 807, 811 (1992); *see also Miaoulis*, 2021 Ark. App. 19, at 11–12 (affirming directed verdict on failure to warn of the unlatching dangers associated with a removable car seat because the evidence established that vehicle owner never removed the seat and, presumably, would not have seen any such warning). In addition, regarding the square marks, Carlson plainly admitted that he never measured the thickness of the inner liner of the subject tire and therefore could not say whether the square marks that he found there had any role in its failure.

Further, while Carlson more definitively testified that a nylon overlay would have prevented the tread-belt detachment, he admitted that he did not have "any evidence to support [his] opinion that the lack of a nylon overlay led to the mechanism of failure" in the subject tire. Carlson also testified that the tire otherwise "failed by aging," and the role

15

of the nylon overlay was merely to "increase the fatigue strength" of the already brittle and rotting tire. Carlson's testimony about the absence of a nylon overlay does not rise to a level that would allow reasonable persons to conclude that it was a more probable cause of the tread-belt detachment than the age and worn condition of the tire itself.

We are also not persuaded that the deposition testimony of the two witnesses from Goodyear, Michael Kerns and Kevin Legge, raises a genuine issue of fact on the question of proximate cause, as Garner suggests. Kerns testified generally that a broad range of variables affect the service life of a tire, including "how the tire's been used, whether it's been under inflated, whether it is in a hot climate or cold climate, [and] whether it was properly stored." Likewise, Legge testified that a tire can hypothetically last fifty years "if it[']s properly used and stored." There is no indication, however, that either witness inspected the subject tire or commented about how these variables—or any others—affected its service life. Accordingly, the circuit court did not err when it determined that Garner's proof did not raise a genuine issue of material fact warranting a trial.

## IV. *Conclusion*

We grant the motion to dismiss because Gordon, the driver of the car and cross-plaintiff below, failed to file a notice of appeal from the final judgment in this case. On the merits of Garner's appeal, we agree that the proof Garner submitted in response to Goodyear's motion for summary judgment falls short of creating a genuine issue of material fact on the question of whether a design defect caused the tire to fail. Accordingly, we affirm the order granting summary judgment.

Affirmed; motion to dismiss granted.

16

HIXSON and BROWN, JJ., agree.

*David A. Hodges* and *Etoch Law Firm*, by: *Louis A. Etoch*, for separate appellant Ileshia Garner.

*Barber Law Firm, PLLC*, by: *Jim L. Julian* and *Rachel E. Hildebrand*, for appellee.